**Albana MUCA, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States; Bureau of Citizenship and Immigration Services.**

No. 03–4729.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a) Nov. 19, 2004.

Decided Dec. 3, 2004.

Before SCIRICA, Chief Judge, and MCKEE and CHERTOFF, Circuit Judges.

OPINION OF THE COURT

CHERTOFF, Circuit Judge.

Petitioner Albana Muca seeks review of the Board of Immigration Appeals' (BIA) final order of removal, in which the BIA denied her claims for asylum and withholding of removal, and her claim under the Convention Against Torture. For the reasons that follow, we will affirm the BIA's decision in part and remand Muca's petition for further consideration.

I

Muca, a native and citizen of Albania, was stopped trying to enter the United States using a fraudulent passport. Muca said that she feared returning to Albania, a claim the INS credited after interviewing her. The INS therefore placed Muca in removal proceedings to allow an Immigration Judge (IJ) to consider her asylum claim.

In her application for asylum and withholding of removal, Muca claimed that her family had been persecuted when Communists controlled Albania.[1] Among other allegations, Muca claimed that her father had been active in Albania's Democratic Party and had attended anti-Communist demonstrations. Muca herself later joined the Democratic Party and helped it draft a referendum on a new Albanian constitution. According to Muca, when the Communist Party regained power in early 1997, it systematically targeted members of the Democratic Party and their families through political revenge, violence, and intimidation.

On April 7, 1998, Muca was accosted by three men in a car, one of whom told her that they were going to send her to Italy. Muca believes that these men were part of a group that illegally traffics girls and women to Italy and forces them into prostitution. Men, including Eraldo, the son of the local police chief, tried to abduct Muca on subsequent occasions, though Muca was able to escape. On one of those occasions, before Muca fled, one of the would-be abductors said, "We think we should send you to Italy. What do you think about that?" (App. 137 (quotation marks omitted).) On another occasion, Muca was pulled into a car by Eraldo and another man. They took her to an abandoned building where Eraldo told her, "Now you better be quiet. Shut up and listen to what we say and tell you to do because we know that you are perfect case [sic] for

---

1. The IJ found that Muca was not credible, but the BIA did not adopt that finding. The government therefore concedes that we must consider Muca a credible witness. (Resp't Br. at 17 n. 4.)

Italy." (App. 143 (quotation marks omitted).)

The IJ concluded that Muca was subject to removal and denied her application for asylum and withholding of removal. The IJ found that there was no nexus between the victimization and Muca's political opinion. The IJ also refused to find that "victims of the sex trade" were a particular social group for purposes of 8 U.S.C. § 1101(a)(42)(A). Finally, the IJ concluded that Muca had not established a link between Albanian gangs forcing women into the sex trade and the Albanian government's use of such gangs to target its political opponents. The BIA adopted and affirmed the IJ's finding that Muca had not established a nexus between her victimization in Albania and her political opinion. The BIA also rejected Muca's claim that she was eligible for protection under the Convention Against Torture, 8 C.F.R. §§ 1208.16, 1208.18, holding that she had failed to establish that Albanian government officials acquiesced in or consented to the nongovernmental actors' conduct towards her. The BIA therefore dismissed Muca's appeal.

## II

BIA determinations are upheld if they are " 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.' " *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (quoting 8 U.S.C. § 1105a(a)(4)). "We will reverse only if the evidence not only supports a contrary conclusion, but compels it." *Guo v. Ashcroft,* 386 F.3d 556, 561 (3d Cir.2004) (quotation marks and alteration omitted).

The Immigration and Nationality Act provides that aliens physically present in the United States may apply for asylum. 8 U.S.C. § 1158(a)(1). To qualify for asylum, an alien must be, inter alia,

unable or unwilling to return to, . . . and unable or unwilling to avail himself or herself of the protection of, [the country of his or her nationality] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A); *see also id.* § 1158(b)(1). The statutes at issue here "make[ ] motive critical." *Elias–Zacarias,* 502 U.S. at 483, 112 S.Ct. 812. That is, Muca must present some evidence to show that the men who sought to persecute her did so *"because of"* one of the protected grounds. *Id.*

## A

■ Muca failed to offer any substantial evidence to support her claim that she was persecuted based on her political opinion. Rather, her testimony supports only the conclusion that her abductors sought to force her into an Italian prostitution ring. Absent from Muca's testimony is any indication that Eraldo or his gang was even aware of Muca's political opinions, much less motivated by them. Speculation aside, Muca did not testify to anything her persecutors said that could allow a reasonable factfinder to conclude that they sought to punish Muca for her political opinions. For these reasons, nothing in the record would support, much less compel, a contrary conclusion. The denial of asylum and withholding was proper.

## B

■ Less clear, however, is the absence of a link between the alleged persecution and Muca's membership in a particular social group, specifically, women who are potential victims of the sex trade. Muca's testimony, which we must credit, *see supra* note 1, may support a finding that she was

targeted based on her membership in that group. But the BIA simply failed to address the issue. We believe that the BIA should have the first opportunity to pass on the question of whether women who are potential victims of the sex trade constitute a particular social group for purposes of § 1101(a)(42)(A). If so, the BIA must also (or alternatively) decide whether the conduct of Eraldo and his associates rises to the level of persecution, another question the BIA did not reach in the prior proceedings. We therefore remand this case to the BIA for consideration of these issues.[2]

For the foregoing reasons, we will affirm the BIA's decision in part, and remand Muca's petition for further consideration.

---

2. The regulations implementing the Convention Against Torture define "torture" as any act by which severe physical or mental pain or suffering is intentionally inflicted on a person "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). There is no evidence in the record to support the quoted element. Muca points to her allegation that Eraldo was the son of the local police chief. Even crediting this allegation, however, there is no evidence that the police chief consented to or acquiesced in his son's conduct, or that he even knew of that conduct. Muca's Convention Against Torture claim fails.