Duan Xiu ZHANG, Petitioner,

v.

John ASHCROFT, Attorney General of the United States, Respondent.

No. 04–1384.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Feb. 14, 2005.

Decided Feb. 17, 2005.

Marco Pignone, III, Wilson & Pignone, Philadelphia, PA, for Petitioner.

Douglas E. Ginsburg, John M. McAdams, Jr., Papu Sandhu, Keith I. Bernstein, United States Department of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

Before SLOVITER, AMBRO and ALDISERT, Circuit Judges.

*OPINION*

SLOVITER, Circuit Judge.

We have before us a petition for review of the decision of the Board of Immigration Appeals ("BIA"), which summarily affirmed the decision of the Immigration Judge ("IJ") denying Duan Xiu Zhang's ("Zhang") application for asylum and withholding of removal. Zhang based her application on alleged religious persecution within the People's Republic of China. We must decide whether the IJ's denial of Zhang's asylum application, based on her adverse credibility determination and her

finding that Zhang "is not an active Christian," is supported by substantial evidence. PA1 at 30.[1] We write only for the parties who are familiar with the facts, and thus restate them only briefly when necessary.

I.

Zhang, a native and citizen of China born on January 5, 1982, testified at her IJ hearing that she became a Christian in 1996 after discovering a church service being held in a farmhouse a few blocks from her home. She liked the church members she met and as a result she began attending services on Saturdays and Sundays. She testified that the leader of her church, Pastor Lin, would teach the Bible to her and the other congregants. Zhang testified that on Saturdays she would help prepare for Sunday service by singing, preparing bible stories and preparing pamphlets. On Sundays she would attend services. In her written asylum application she stated that she was baptized sometime in October 1997.

Zhang testified that in early 1998 she was criticized by her teacher who overheard her telling Bible stories to her classmates and who sent her to the principal. In the principal's office she was told "to not believe in Christians" and that "God doesn't exist," PA2-6, and was threatened with expulsion if she did not stop attending services. Zhang, who did not stop going to church, was sent to a re-education group for two weeks. When the classes ended she was told to stop believing in God and ordered to go once a week to the police station to report her daily activities, which Zhang did. She would remain at the police station for approximately half an hour, and would give the officers information regarding her daily activities before they would permit her to go home.

---

1. The appendix in this case appears in two volumes, which we cite as PA1 and PA2.

Zhang testified that she continued attending Pastor Lin's church until October 18, 1998, when the pastor was arrested. In November, shortly after the arrest, she and other members of her church protested Pastor Lin's arrest by sitting silently in front of city hall. After approximately thirty minutes, the group was told to leave and threatened with arrest. As a result, the group, including Zhang, decided to leave. After she went home her parents began to worry for her safety and sent her to her uncle's house where she stayed for approximately two months. At that time, a policeman came to her house asking about her whereabouts and ordering her to report to the police station. After this visit Zhang fled to the United States.

Zhang entered the United States on March 30, 1999 with the help of a smuggler.[2] Her cousin took her to Chinatown in New York City where she lived for two years. She testified that she attended a church in Chinatown once a month during these two years. She then moved to Lebanon, Pennsylvania, but attended church only once because the church services were conducted in English.

In January 2002, Zhang was married to Lin Chun. The record is not clear as to when and where they met or where she lived after they were married. The IJ tried to piece together a timeline. Zhang either met her husband in New York City or Philadelphia, he either worked in Philadelphia or Staten Island, and at the time of the hearing she was apparently living in Brooklyn but planned to return to Philadelphia after the birth of her baby, which was due in October 2002. As the IJ noted, Zhang's "testimony regarding her resi-

dences . . . [was] totally confusing and contradictory." PA1 *Id.* at 25. We agree.

On September 19, 2000, Zhang sought asylum in the United States under section 208 of the Immigration and Nationality Act, withholding of removal under section 241(b)(3) of the same Act and requested relief under Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment. At a hearing before the IJ on July 17, 2002, Zhang claimed that she was entitled to asylum because she suffered religious persecution while in China and because she would be persecuted for her religious activities should she return to China. However, while on the stand she changed her claim from one based on religious persecution to a claim based on persecution for family planning. She testified that because she was pregnant and not yet of legal age, she would be forced to undergo an abortion and sent to jail if she were to return to China.

The IJ denied Zhang's application for asylum and withholding of removal, and ordered her removed. She concluded first that Zhang presented "absolutely no evidence of her activities with the church in China," which would have subjected her to past persecution. PA1 at 23. The IJ then found that Zhang did not have a well founded fear of future persecution because her testimony regarding her belief in Christianity was not credible. Finally, the IJ denied Zhang's request for relief under Article 3 of the UN Convention Against Torture Act.

On January 15, 2004, the BIA affirmed the IJ's decision without opinion pursuant to 8 C.F.R. § 1003.1(e)(4) and issued an

---

**2.** Zhang testified that she paid the smuggler approximately $50,000 and that she repaid them in full. *See* PA1 at 15. She also testified that she worked in a buffet-type Chinese restaurant in Lebanon, Pennsylvania for near-

ly two years collecting dishes. The IJ did not base her adverse credibility determination on the unlikelihood that a menial restaurant worker could save $50,000 in two years. PA1–13.

opinion denying Zhang's motion to remand based on changed circumstances because she "has not provided any evidence to support her motion." Consequently, the Board found that Zhang had "failed to establish a *prima facie* eligibility for relief." PA1 at 5.

We have jurisdiction to review a final order of removal pursuant to 8 U.S.C. § 1252(a)(1). This court's jurisdiction over final orders of removal is generally limited to review of BIA decisions. When the BIA adopts and affirms the IJ's decision without an opinion, we review the IJ's decision. *Tarrawally v. Ashcroft*, 338 F.3d 180, 184 (3d Cir.2003); *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir.2002).

## II.

An alien seeking asylum on the basis of past persecution must demonstrate "(1) an incident, or incidents, that rise to the level of persecution; (2) that is [or are] 'on account of' one of the statutorily-protected grounds; and (3) is [or are] committed by a government or forces the government is either 'unable or unwilling' to control." *See Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir.2003) (*quoting Gao*, 299 F.3d at 272).

A showing of past persecution raises the presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.13. If past persecution is not established, an alien must establish a subjective "well-founded fear" of future persecution that is objectively reasonable. *See Gao*, 299 F.3d at 272. An alien is required to "show by credible, direct, and specific evidence an objectively reasonable basis for the claimed fear of persecution." *Chen v. Ashcroft*, 376 F.3d 215, 223 (3d Cir.2004); *see also Guo v. Ashcroft*, 386 F.3d 556, 561 (3d Cir.2004). "While we defer to the IJ on credibility questions, that deference is expressly conditioned on support in the rec-

ord...." *El Moraghy v. Ashcroft*, 331 F.3d 195, 205 (1st Cir.2003); *see also Abdulrahman v. Ashcroft*, 330 F.3d 587, 597 (3d Cir.2003) (stating that "substantial deference" to a finding is to be "afforded ... where it is grounded in evidence in the record").

## III.

■ In summarizing Zhang's position, the IJ noted that Zhang "based her claim solely on the fact that she was a Christian and was involved in Christian activities," PA1 at 22, and that she

was so dedicated to her religious activities that despite warnings from her school, she continued to proselytize in the school, telling Bible stories and sharing Bible stories with her classmates during school and because of this was eventually expelled from school. She further testified that she participated in a sit-down protest with other members of her church when they learned that their pastor, Lin, had been arrested for his religious activities. It was because of this involvement in this protest that she was nearly arrested. She was able to escape and go home. However, because the authorities were currently looking for her, her family thought it best for her to leave China and go to the United States.

PA1 at 22.

We question whether, even assuming the truth of all of the above treatment, Zhang has set forth sufficient basis to establish past persecution. Zhang has cited no authority that suggests that expulsion from school and near arrest constitute the type of persecution to which the statute is addressed. Indeed, we held in *Fatin v. INS*, 12 F.3d 1233, 1243 (3d Cir.1993), that "'persecution' is an extreme concept that does not include every sort of treatment

that our society regards as offensive." Zhang was not arrested nor was she beaten. Even if she had been threatened with arrest, the threat was not personally directed to her.[3] Finally we note that sections of the Department of State report reflect that leaders of churches are sought after by the Chinese government. The record however, does not support any inference that Zhang was a leader of her church or was "persecuted" for involvement with the church, as this court has defined that term.

■ If past persecution is established, then the applicant is entitled to a rebuttable presumption of a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b)(1). If the applicant presents inadequate evidence of past persecution, as in this case, an applicant must establish "a subjective fear of persecution that is supported by objective evidence that persecution is a reasonable possibility." *Senathirajah v. INS*, 157 F.3d 210, 215 (3d Cir. 1998). An asylum applicant must offer sufficient "credible, direct, and specific" evidence to support her application. *Chen*, 376 F.3d at 223.

In the present instance, we conclude that substantial evidence in the record supports the IJ's determination, based on an adverse credibility finding, that Zhang failed to establish a reasonable and subjective fear of future persecution. As the IJ states, there were numerous inconsistencies in Zhang's testimony that "ha[d] a serious impact on [her] credibility regarding her devotion to the Christian religion." PA1 at 24.

For instance: (1) even though Zhang claimed to be a religious Christian, she testified that she only attended church once a month, even when she had access to services conducted in Chinese; (2) she claimed she attended a church in New York's Chinatown once a month for two years yet she could not remember the name of the church; (3) she stated that she could not get a certificate of membership from the church because she was not baptized, but she also testified she had been baptized in 1997; (4) she gave extremely contradictory testimony regarding her residences; (5) she claimed she was seeking asylum from religious persecution and then on the stand changed her claim to one of opposition to family planning; (7) she testified that she was disciplined for sharing bible stories with classmates yet her knowledge of the Bible was not great enough for her to have been able to share Bible stories.

Although the last inconsistency noted by the IJ concerning Zhang's ability to proselytize may be questionable,[4] overall the inconsistencies cited by the IJ provide specific, cogent reasons, supported by the record, for her finding that Zhang was not credible. *See Dia v. Ashcroft*, 353 F.3d 228, 247 (3d Cir.2003) (en banc) ("An alien's credibility, by itself, may satisfy his bur-

---

**3.** Because we find no basis to support a claim of past persecution, we need not consider the Government's argument that Zhang has waived or abandoned any argument relating to the issue of past persecution by failure to discuss that issue in her brief.

**4.** Zhang argues that her knowledge of Christianity was not, "in any way, less than one would expect of an individual with the amount of exposure to the religion as she asserted in an unofficial church in China combined with limited contact with churches where her language is spoken in the United states." Appellant's Br. at 11. Zhang was able to fairly accurately retell the biblical story set forth in *John:* 8 and, as Zhang notes in her brief, there is no reason why "a minor who had recently converted to Christianity should not be expected to praise the merits of her religion and attempt to convert others despite lacking an advanced level of knowledge." *Id.* at 10.

den, or doom his claim.").[5] We need not determine whether we agree with the IJ's opinion that Zhang "is not an active Christian" or "that she is a Christian at all," PA1 at 30, because we agree with the IJ's overarching conclusion that Zhang "has failed to establish that she would suffer future persecution because of her religious activities." PA1–30.

Finally, we agree with the IJ that the record shows no grounds for a finding of future persecution based on Zhang's claims that she would be subject to a forced abortion or persecuted for violation of China's family planning policies. The IJ correctly concluded that Zhang had no reasonable fear of forced abortion because, at the time of hearing, Zhang was six months pregnant and would give birth to the child prior to any forced removal.

## IV.

We have examined the record and find that there is substantial evidence supporting the IJ's determination that Zhang "would not suffer future persecution based on any connection to any church for any religious reasons." *Id.* If Zhang is not entitled to asylum, it follows that she has not met the criteria for withholding of removal or entitlement under the CAT. We will therefore deny Zhang's Petition for Review.

---

5. Zhang suggests that the IJ conflated a burden of proof analysis into her determination of adverse credibility. *See generally Abdulai v. Ashcroft*, 239 F.3d 542, 551 n. 6 (3d Cir. 2001) (stating that credibility determinations involve "only an analysis of the internal consistency and plausibility of an applicant's claim, whereas burden of proof analysis also involves consideration of all the surrounding evidence (or lack thereof)."). We find however, as noted above, that the IJ's adverse credibility finding was based on substantial internal inconsistencies in Zhang's testimony as reflected in the record --- even if the IJ did, in one instance, conflate Zhang's failure to produce evidence of church attendance into her determination of credibility.