

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-9-2006

# Mogot v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4461

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Mogot v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1609.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1609

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

_____

NOS.  04-4461 and 05-1278

_____

MUTALIB MOGOT; DIANA ANGGRIANI EMMIW SARI,
Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES;
SECRETARY, DEPARTMENT OF HOMELAND SECURITY,
Respondents

_____

On Petition for Review of Orders of the Board of Immigration Appeals
Nos. A95-468-198 & A95-468-199
Immigration Judge:  Hon. R. K. Malloy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 23, 2006

BEFORE:  RENDELL and STAPLETON, Circuit Judges,
and POLLAK,* District Judge

( Filed: February 9, 2006 )

_____

_____

* Hon. Louis H. Pollak, United States District Court Judge for the Eastern District of
Pennsylvania, sitting by designation.

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Petitioner Mutalib Mogot ("Mogot") and his wife, Diana Anggriani Emmiw Sari ("Ms. Sari"), ("petitioners") are natives and citizens of Indonesia. They petition for review of a Board of Immigration Appeals ("BIA") order denying them asylum, withholding of removal, and relief under the Convention Against Torture Act. We will deny the petition.[1]

Mogot testified that he was raised in the Muslim faith but converted to Christianity in 1982. As a result, his Muslim family considered him to be insane and had him involuntarily committed to a sanitarium where he testified he was beaten, drugged and held in isolation for failing to renounce his new faith. After three months of abuse, he escaped and moved elsewhere in Indonesia, working for a series of oil companies. He married Ms. Sari in 1985 and they lived uneventfully on Batam until Ms. Sari returned alone to Jakarta to visit her family in 1997. While on that visit, she was abducted from a Jakarta supermarket parking lot into a van.

---

[1] We conclude that we have jurisdiction to review both the October 29 and December 30, 2004, orders of the BIA.

Ms. Sari testified that once inside the van, her abductors tied and blindfolded her and told her that she and her husband must return to Islam. When she told them she was born Christian, they said "You are Mogot's wife, he must return to Islam!" Ms. Sari further testified that they threatened to kill both her and her husband if he did not return to Islam. Her abductors released her in about three hours, and she went to the police station. Once at the police station, however, she decided it was useless to report the incident because all of the officers were Muslims.

According to Mogot's petition for asylum, he believes that, if he is returned to Indonesia, his family will search for him and place both him and his wife in a sanitarium.

Petitioners further testified that, in the course of rioting in March of 1998, their house was burned by people from a mosque. They did not report the incident to the police. Petitioners remained in Indonesia until 2000 when they managed to get visitor visas to come to the United States. Mogot came first in November, 2000. On Christmas day, 2000, Ms. Sari testified that she attended a Christian church that was bombed during the service. Ms. Sari left for the United States in February, 2001.

The Immigration Judge ("IJ") concluded that petitioners had failed to establish that they suffered past persecution on account of any of the five enumerated grounds or that they would suffer future persecution on any of such grounds if they returned to Indonesia. The BIA concurred in this judgment.

The IJ credited Mogot's testimony that he was raised a Muslim, that he converted

to Christianity, that his family was very angry as a result, and that his uncle and two brothers had had him involuntarily committed to a sanitarium where he suffered three months of abuse because of his new faith. The IJ concluded, however, that this abuse "was brought about by his family and not by the Government," IJ Op., App. at 29-30, and, accordingly, that the Court could not "find that the placement of [Mogot] in a sanitarium was [past] persecution" for asylum purposes. IJ Op., App. at 30.

The IJ also credited the testimony about the 1998 house burning, the 2000 church bombing, and the 1997 abduction of Ms. Sari. He rejected, however, the notion that Ms. Sari had been abducted because she was the wife of Mogot, explaining that the abductors could have had no way of knowing who she was given that even Mogot's family did not know her identity. The IJ then speculated that "if there was a reason related to an enumerated ground it would be that they thought that the wife was Chinese and perhaps that is why they kidnapped her." IJ Op., App. at 31.[2]

With respect to the abduction, house burning and church bombing, the IJ held, as

---

[2]Petitioners did not seek relief on the basis of persecution on ethnicity grounds. Given the other conclusions of the IJ, however, they would not have been entitled to that relief even if they had made this claim. As we explained in *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005):

> The 1999 Country Report on Indonesia indicated that there was a sharp decline in violence against Chinese Christians following the period of intense violence in 1998, and noted that the Indonesian government officially promotes religious and ethnic tolerance. Moreover, this violence seems to have been primarily wrought by fellow citizens and not the result of governmental action or acquiescence.

in the case of the sanitarium incident, that Mogot and Ms. Sari had "failed to demonstrate that they suffered past persecution on account of any of the enumerated grounds by the Government of Indonesia or an agency under the control of the Government." IJ Op., App. at 33. While the IJ acknowledged rioting involving attacks by Muslims on Christians and Christians on Muslims, he found that the government of Indonesia was not responsible for this rioting and did not persecute Christians.

Finally, the IJ concluded that the record suggested that, when Mogot and his wife came to the United States, they were not concerned about persecution in Indonesia, but rather were motivated by economic opportunity in the United States:

> The Respondent was gainfully employed during his entire lifetime in Indonesia, his religion never seemed to be a factor in obtaining employment, he worked for major companies, oil drilling companies. He also was promoted to a responsible position, one position he managed or supervised 300 workers and, yes, there was resentment perhaps by some of the Muslim workers, however, that did not stop him from being promoted to that position. The Respondent was not fired from this position, he resigned in order to travel to the United States to obtain work in the United States and this statement is born out by the letters of reference he obtained from employers, letters which he could provide to employers in the United States and so, as stated earlier, it appears the purpose of the Respondents trip to the United States was for economic reasons, there was sufficient evidence in the record, background materials in Indonesia to reflect for economic situation in Indonesia, which is promoting the outward migration of many Indonesians to other countries to seek employment and better life.

IJ Op., App. at 35.

Petitioners insist that the facts accepted by the IJ constitute past persecution on the ground of religion and that they are therefore entitled to a presumption that they have a

5

well-founded fear of future persecution on that ground should they be returned to Indonesia. They contend that persecution inflicted by family members is relevant persecution if the government is unable or unwilling to control it.

Substantial evidence supports the conclusions reached by the IJ. The State Department's 2001 Country Report indicates that the Indonesian Constitution guarantees religious freedom and that the Indonesian government respects this right. It specifically notes that the government does not target or use violence against converts to or from a particular religion. Mogot's experience was consistent with this report. He remained in Indonesia for eighteen years after his escape from the sanitarium, during which time he freely practiced his religion, married a Christian woman, and had a successful business career. Similarly, the record reflects that Ms. Sari practiced her religion in Indonesia without adverse consequences from 1965 to 1997 and for three years after her 1997 abduction.

While it is true that persecution by family members may be relevant for asylum purposes under some circumstances when the government is unable or unwilling to control it, the petitioners had the burden of establishing their eligibility for the relief they sought, *Abdille v. Ashcroft*, 242 F.3d 477, 482 (3d Cir. 2001), and, as the IJ correctly concluded, they failed to carry that burden. There is no evidence in the record that would support a finding that anyone associated with the government even knew anything about the abuse that Mogot suffered in the sanitarium, much less that the government was

unwilling or somehow unable to protect him.

Similarly, as the IJ correctly concluded, there is no evidence in the record that would support a conclusion that the Indonesian government had anything to do with the 1997 abduction, the burning of the house, or the bombing of the church, or that it was unwilling or unable to control whomever it was that was responsible for those incidents. As we have noted, none of the incidents relied upon by the petitioners was reported to the authorities.

Accordingly, we conclude that the record supports the IJ's and the BIA's conclusion that petitioners failed to demonstrate that they suffered past persecution, or reasonably feared future persecution, on grounds of religion having anything to do with the government of Indonesia. Petitioners thus did not establish their eligibility for asylum relief. It necessarily follows that they did not establish their entitlement to withholding of removal. *Guo v. Ashcroft*, 386 F.3d 556, 561 (3d Cir. 2004). Similarly, the record will not support a finding of a likelihood that petitioners would be tortured if returned to Indonesia.

The petition for review will be denied.