

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-25-2004

# Guo v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 03-2972

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Guo v. Atty Gen USA" (2004). *2004 Decisions*. Paper 165.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/165

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES
COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-2972

_____

JIAN LIAN GUO,

Petitioner

v.

JOHN ASHCROFT, Attorney General of
the United States

Respondent

_____

On Petition for Review of a Final Order
of the Board of Immigration Appeals
(No. A77-297-574)

_____

Argued June 29, 2004

Before: AMBRO, ALDISERT and
STAPLETON, Circuit Judges

(Opinion filed: October 25, 2004)

Theodore N. Cox, Esquire
Joshua Bardavid, Esquire (Argued)
401 Broadway, Suite 701
New York, NY 10013

*Attorney for Petitioner*

Peter D. Keisler
   Assistant Attorney General, Civil
Division
Mark C. Walters
   Assistant Director
Theordore C. Hirt, Esquire (Argued)
Douglas E. Ginsburg, Esquire
John D. Williams, Esquire
John M. McAdams, Jr., Esquire
Department of Justice Civil Division
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC   20044

*Attorneys for Respondent*

_____

OPINION OF THE COURT

_____

AMBRO, *Circuit Judge*

Jian Lian Guo seeks review of the order of the Board of Immigration Appeals ("Board") denying her motion to reopen her immigration proceedings. Because we conclude that the Board failed to substantiate its decision and impermissibly relied on a prior adverse credibility determination unrelated to Guo's petition for asylum, we grant the petition for review and remand for further proceedings.

**I. Factual and Procedural History**

Guo is a native and citizen of China. She entered the United States without valid entry documentation on January 3, 2000. On January 21, 2000, the Immigration and Naturalization Service

("INS")[1] charged her with removability based on § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I). At a master calendar hearing on March 23, 2000, Guo conceded removability. The same day she filed an application for asylum based on religious persecution and requested withholding of removal under INA § 241(b), 8 U.S.C. §1231(b), and Article III of the United Nations Convention Against Torture.[2]

Guo initially justified her application for asylum on the basis of religious persecution. She stated that she had joined an "underground church" in China in 1996 and was baptized in July 1997. In December 1999, government officials purportedly sought to arrest her at a church meeting where she was teaching Sunday school; she allegedly evaded arrest and fled the country. Guo further claimed to have left behind in China her first husband, whom she had married in 1999 and whose whereabouts she did not know.

On August 2, 2000, an Immigration Judge ("IJ") denied Guo's application for asylum. The IJ found that Guo was not credible. He concluded that her story was fabricated and, even if true, would not merit asylum. He also doubted Guo's professed ignorance of her first husband's location and speculated that he was in the United States. He therefore denied her application for asylum. Guo appealed, and on October 29, 2002, the Board affirmed without issuing a separate opinion.

On January 21, 2003, Guo filed a motion to reopen the immigration proceedings based on intervening developments. In March 2001, she married Li Kang Chan in New York. On January 15, 2002, their first child was born in Manhattan. Later that year, Guo discovered that she was again pregnant.[3] She thus claimed that she was entitled to asylum based on China's one-child family planning policy; she feared that if she returned to China she would be subject to China's forcible sterilization policy and other penalties. In support of her motion to reopen, Guo submitted a previous Board decision granting reopening for a Chinese applicant with two United States-born

---

[1]On March 1, 2003, the INS ceased to exist as an agency within the Department of Justice and the INS's functions were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 451 & 471, 116 Stat. 2135. The Board remains within the U.S. Department of Justice.

[2]The United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, § 2242, 112 Stat. 2681-761 (codified at 8 U.S.C. § 1231).

[3]The child was born on July 24, 2003, after the Board issued its decision.

children, a new application for asylum, her marriage certificate, the birth certificate of her first child, a letter from her obstetrician describing her pregnancy, and an affidavit by retired demographer John Shields Aird, Ph.D.

The Board denied the motion to reopen on June 16, 2003, explaining that Guo had "failed to meaningfully address the negative credibility determinations noted in the Immigration Judge's decision." The Board's opinion stated that even if it "were to find her claim credible, she has not established a 'well-founded fear' that a reasonable person in her circumstances would fear persecution" on a protected basis. It concluded that the evidence she had presented was insufficient to establish that "officials punish returning Chinese nationals who are pregnant, have given birth to children in foreign countries, or prohibit them from having more children upon their return."

The Board had jurisdiction over Guo's motion to reopen under 8 C.F.R. § 1003.2(c). We have jurisdiction over her timely petition for review pursuant to 8 U.S.C. § 1252.

### Discussion

### I. Overview of the statutory framework

Section 208(b) of the INA, 8 U.S.C. § 1158(b), confers on the Attorney General discretion to grant asylum to an alien who is a "refugee." An individual qualifies as a refugee if he or she is "unable or unwilling" to return to his or her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). Forced abortion and forced sterilization constitute persecution "on account of political opinion." INA § 101(a)(42), 8 U.S.C. § 1101(a)(42). An individual with a well-founded fear that she will be forced to undergo a coercive population control procedure of this sort or be subject to persecution for failure to do so has a well founded fear of persecution. *Id.*

An applicant bears the burden of proving eligibility for asylum based on specific facts and credible testimony. 8 C.F.R. § 208.13(a); *Abdille v. Ashcroft*, 242 F.3d 477, 482 (3d Cir. 2001). In order to demonstrate a well-founded fear of persecution, an applicant must satisfy three requirements: (1) he or she has a fear of persecution in his or her native country; (2) there is a reasonable possibility that he or she will be persecuted upon return to that country; and (3) the applicant is unwilling to return to that country as a result of his or her fear. 8 C.F.R. § 208.13(b)(2)(i).[4]

---

[4]The eligibility threshold for withholding of removal is even higher: the Attorney General must determine that repatriation will more likely than not jeopardize the alien's life or freedom on account of one of the protected grounds. INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). The applicant must therefore demonstrate a "clear probability" of persecution.

Board determinations are upheld if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)). We will reverse only if "the evidence not only supports [a contrary] conclusion, but compels it." *Id.* at 481 n.1 (emphasis omitted). Adverse credibility determinations are factual matters and also are reviewed for substantial evidence. *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir. 1998). They likewise will be upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

In this case, we are asked to review the Board's denial of Guo's motion to reopen. As a general rule, motions to reopen are granted only under compelling circumstances. The Supreme Court has explained:

> The granting of a motion to reopen is . . . discretionary. . . . [T]he Attorney General has 'broad discretion' to grant or deny such motions. Motions for reopening of immigration proceedings are disfavored for the same reasons as are

petitions for rehearing and motions for a new trial on the basis of newly discovered evidence. This is especially true in a deportation proceeding, where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States.

*INS v. Doherty*, 502 U.S. 314, 323 (1992) (citations omitted). In light of these considerations, our review is highly deferential: we review the denial of a motion to reopen for abuse of discretion. *Id.* at 323. "Discretionary decisions of the [Board] will not be disturbed unless they are found to be arbitrary, irrational, or contrary to law." *Tipu v. INS*, 20 F.3d 580, 582 (3d Cir. 1994) (quotation omitted).

## II. Application to Guo

Guo makes two principal arguments. First, she argues that the Board erred in considering the IJ's adverse credibility determination, which was based on facts unrelated to China's family planning policies. Second, Guo suggests that the documents she submitted are adequate to establish *prima facie* eligibility for asylum—a reasonable likelihood that she would prevail on the merits if a motion to reopen were granted—and she contends that the Board erroneously held her to a higher standard. We agree with her on both counts.

### A. Adverse credibility determination

---

*Senathirajah v. INS*, 157 F.3d 210, 215 (3d Cir. 1998). Given this higher standard, an applicant who does not qualify for asylum also does not qualify for withholding of removal.

4

In reviewing Guo's initial petition for asylum, the IJ deemed her testimony not credible. The Board relied on that adverse credibility determination in evaluating her motion to reopen. Because the basis for the IJ's credibility assessment was utterly unrelated to Guo's later claim, the Board erred by taking it into consideration.

Guo does not dispute that the IJ's credibility determinations were supported by the record. Indeed, she would be hard pressed to argue otherwise. The IJ's ruling contained seven distinct references to her lack of credibility. The adverse credibility findings were directly related to the central events upon which Guo's asylum claim initially was based: her alleged religious persecution.

The legitimacy of an initial credibility determination does not, however, justify denial of all subsequent applications for asylum. No one has explained how the IJ's adverse credibility findings implicated Guo's motion to reopen on a ground not previously dealt with by the IJ. Guo's credibility (or lack thereof) for religious persecution simply is not relevant to her motion to reopen in this case, which relied principally on the fact of her second pregnancy in contravention of China's one-child policy and on China's practice of persecuting those who violate the policy.

The Government's argument reduces to a bad-faith theory of asylum law: once credibility is tarnished, all successive asylum applications are irrebuttably presumed to be false. But case law does not support that once an applicant is deemed uncredible, she is excluded from making further, unrelated asylum claims.[5] Nor does one adverse credibility finding beget another. On the contrary, an IJ must justify each adverse credibility finding with statements or record evidence specifically related to the issue under consideration. We have emphasized that adverse credibility findings are afforded deference only if they are "supported by specific cogent reasons." *Gao v. Ashcroft*, 299 F.3d 266, 276 (3d Cir. 2002). Those reasons "must be substantial and bear a legitimate nexus to the finding." *Id*.

Moreover, we are unable to imagine a sufficient nexus between Guo's suspect testimony concerning her alleged religious persecution and the Board's conclusion about China's family planning policy. The Government's efforts to identify a

---

[5] 8 U.S.C. § 1158(d)(6) provides that an alien adjudged by the Attorney General to have made a "frivolous application for asylum," as defined in the statute, will be permanently barred from entering the United States. There was no such finding in this case. The protections afforded to the alien under this provision, as well as its relatively infrequent application, indicate that Congress did not intend to preclude an alien from reopening asylum proceedings based solely on a prior adverse credibility determination.

sufficient connection are unpersuasive.[6] And indeed our Court (albeit in non-precedential opinions), as well as the

---

[6]For example, the Government contends that Guo's credibility determination is relevant because it implicated her purported "family situation." Namely, "[t]he Immigration Judge was entirely unconvinced by Guo's description of the status of her [first] husband, Yung Chu Li." To be sure, we find this aspect of Guo's story troublesome. Guo has not indicated that she and her first husband were divorced, and yet subsequent to her initial hearing she married Li Kang Chan in the United States and had two children with him. But the Government has failed to explain how Guo's questionable marital status is relevant to her asylum claim. She is not seeking lawful immigration status based on her marriage to Li Kang Chan. And it is not disputed that Guo has two children. Neither the identity of the children's father nor his relationship to Guo has any bearing on her claim.

Similarly, because the IJ suspected that Guo "is here for different reasons rather than because of religion," the Government argues that the adverse credibility finding stemmed from his suspicion that Guo's true motivation for seeking asylum was to remain in the United States. This is simply speculative. Moreover, we are unaware of any case that holds that an applicant will be denied asylum simply because building a better life in America was a motivation for leaving her country.

Board itself in decisions discussed in the next section, disconnect adverse credibility from China's family planning policy. *See, e.g.*, *Cai v. Ashcroft*, 63 Fed. Appx. 625, 2003 WL 1972020 (3d Cir. Apr. 29, 2003) (remanding to the Board for reconsideration of a denial of asylum based on China's family planning policy where the petitioner, whom the IJ found lacked credibility, had two children at the time of filing and four at the time of her motion for reconsideration); *cf. Lin v. INS*, 78 Fed. Appx. 784, 2003 WL 22454477 (2d Cir. Oct. 29, 2003) (reversing Board's denial of a motion to reopen, based on adverse credibility finding, in light of a new translation of a sterilization certificate and an affidavit by Mr. Aird).

## B. Well-founded fear of persecution

Because we conclude that the Board was not entitled to rely on the IJ's prior, unrelated adverse credibility determination in denying Guo's motion to reopen, we evaluate the alternative basis for its holding. The Board "note[d] that, even if [it] were to find her claim credible, she has not established a 'well-founded fear' that a reasonable person in her circumstances would fear persecution" within the meaning of the statute. Our review of this argument has two parts. We consider whether the Board applied the correct standard in assessing whether Guo presented sufficient evidence, and we determine whether the Board abused its discretion in deeming the evidence insufficient.

6

A motion to reopen must establish *prima facie* eligibility for asylum. *Sevoian v. Ashcroft*, 290 F.3d 166, 173, 173 n.5 (3d Cir. 2002); *Reyes v. INS*, 673 F.2d 1087, 1089 (9th Cir. 1982). In *Sevoian*, we explained that "the prima facie case standard for a motion to reopen . . . requires the applicant to produce objective evidence showing a 'reasonable likelihood' that he can establish [that he is entitled to relief]."[7] *Id.* at 175. The Board, however, in its denial of Guo's motion to reconsider, stated that she must proceed to end-game and "*establish* that there is a pattern or practice [of enforcing the family planning policy against Chinese nationals with foreign-born children] in her homeland" (emphasis added). In this context, "establish" means the evidence for asylum outweighs the evidence against. A "reasonable likelihood" means merely showing a realistic chance that the petitioner can at a later time establish that asylum should be granted. The distinction may at first appear to be subtle shading, but without it "*prima facie*" (meaning at first sight) would lack meaning. Guo argues that the evidence she submitted, even if initially insufficient to establish eligibility for asylum, at least satisfied the *prima facie* evidence requirement.

Having concluded that the Board held Guo to an excessively rigorous standard, we might ordinarily remand for application of the proper standard. But in this case, we conclude as a matter of law that the evidence submitted by Guo in support of her motion to reopen constitutes *prima facie* evidence.[8] While we cannot

---

[7]*Prima facie* scrutiny entails consideration of "the evidence that accompanies the motion as well as relevant evidence that may exist in the record of the prior hearing, in light of the applicable statutory requirements for relief." *Id.* at 173.

---

[8]In *Sevoian*, we wrote that there are

> three principal grounds on which . . . the Board may deny a motion to reopen immigration proceedings. First, it may hold that the movant has failed to establish a prima facie case for the relief sought . . . . Second, it may hold that the movant has failed to introduce previously unavailable, material evidence that justifies reopening . . . . Third, in cases in which the ultimate grant of relief being sought is discretionary (asylum . . . but not withholding of deportation), the Board can leap ahead over the two threshold concerns (prima facie case and new evidence/reasonable explanation) and simply determine that even if they were met, the movant would not be entitled to the discretionary grant of relief.

7

yet say that Guo is entitled to asylum, we are persuaded that she at least deserves a hearing.

Thus in the following discussion we do not reach the merits of Guo's claim. But we do explain the relevant tests under applicable case law in support of our conclusion that Guo has shown a realistic chance of success on remand.

Whether fear of persecution is well-founded turns, as a practical matter, on two inquiries. First, an applicant must show a subjective fear of persecution. She may satisfy this prong by a showing that her fear is genuine to her. *Zubeda v. Ashcroft*, 333 F.3d 463, 469 (3d Cir. 2003). A primary means of showing that fear is genuine is with credible testimony. Guo's statement that accompanied her motion to reopen mentions that she "cannot go back to China" because, "[i]f I was sent back to China, I will be forcibly aborted. If I was sent back after I delivered the second child, either my husband or I will be sterilized by [the] Chinese government because we violated [its] family planning policy." This statement reveals that there is a reasonable likelihood she will give credible testimony that her fear is genuine.

---

*Id*. at 169-170 (citations and quotations omitted). In this case, the Board gave no indication that it was basing its decision on either the second or third ground for denying a motion to reopen. Furthermore, we know of no reason why Guo's motion to reopen should be denied on either of those grounds.

Second, the applicant must support the objective reasonableness of her fear. "Determination of an objectively reasonable possibility requires ascertaining whether a reasonable person in the alien's circumstances would fear persecution if returned to the country in question." *Zubeda*, 333 F.3d at 469 (citing *Chang v. INS*, 119 F.3d 1055, 1065 (3d Cir. 1997)). While it is unclear precisely how likely persecution must be to render an applicant's fear of future persecution well-founded, "[o]ne can certainly have a well founded fear of an event happening when there is less than a 50% chance of the occurrence taking place." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987).

Guo's principal evidence regarding China's enforcement of its one-child policy with respect to foreign-born children was an affidavit of John Aird, a former "specialist on demographic developments and population policy in . . . China." The affidavit states that Chinese couples returning home with unauthorized children "cannot expect to be exempt" from the family planning policy because

> to ignore their violations would tend to undermine the enforcement of the rules in China. The Chinese authorities cannot afford to let rumors get out that couples of childbearing age can evade the one-child limit by leaving the country illegally, having unauthorized children in foreign countries and

8

returning home without suffering the standard penalties.

Aird thus opines that "the concerns of Chinese couples over what awaits them if they are repatriated with children born abroad without official permission are probably in most cases well-founded."

The affidavit cites seven sources. Much of Aird's affidavit is devoted to discrediting one of them, the State Department's April 1998 Profile of Asylum Claims and Country Conditions for China ("1998 Profile"). That document reports that China's one-child family planning policy varies in implementation and that Fujian Province, where Guo lived, is "lax" in its enforcement of the policy (in some cases permitting parents to apply after several years to conceive a second child if their first child is female). In fact, the 1998 Profile suggests that enforcement of the policy is applied so "loosely" in Fujian Province—exceptions to the one-child policy "are becoming the norm" in rural areas—that the province has been criticized in the official press. More importantly, the 1998 Profile discusses the application of the one-child policy to couples with foreign-born children and concludes, based on "anecdotal information," that "the relevant authorities do not always handle such situations strictly. At least some couples that have children in the United States beyond the nominal limits and then return to China are, at worst, given modest fines."

Aird criticizes the 1998 Profile's reliance on "anecdotal" evidence. He points to other sources, such as newspaper articles, which indicate that the one-child policy is indeed enforced against couples with unauthorized foreign-born children. He provides two specific examples of the application of the policy to Chinese couples returning from abroad. In addition, he emphasizes the interest of the Chinese government in giving our State Department "a deceptively mild impression" of China's policies. We conclude that where a motion to reopen is accompanied by substantial support of the character provided by the Aird affidavit, the Government's introduction of a five-year-old State Department report, without more, hardly undermines Guo's *prima facie* showing. *Cf. Berishaj v. Ashcroft*, 378 F.3d 314 (3d Cir. 2004).

Moreover, we agree with Guo that the 1998 Profile, to the extent it is reliable, actually may buttress her *prima facie* case. The 1998 Profile states that the central Chinese government

> does not authorize physical force to make people submit to abortion or sterilization, but there are reports that this continues to occur in some rural areas as local population authorities strive to meet population targets. Chinese officials acknowledge privately that forced abortions and sterilizations still occur in areas where family planning

9

personnel may be uneducated and ill-trained.

Moreover, the Board's analysis failed to account for differences in enforcement based on an immigrant's legal status in the United States. The 1998 Profile references anecdotal evidence to the effect that "possession or lack of possession of U.S. permanent resident status is the key criterion for determining whether couples are subject to family planning restrictions."

It is true, as the Government contends, that the Aird affidavit does not demonstrate that any "specific proportion or percentage" of couples returning to China will be subject to its family-planning policy, nor does Aird contest that variations occur in enforcement. But that is not Guo's burden. While some couples in Guo's situation might avoid serious repercussions upon returning to China, the conflicting evidence suggests at least a reasonable likelihood that Guo will establish a reasonable fear of persecution.

What makes the Board's decision particularly suspect in this case is its failure to comport with its own prior decisions, many of which reach the opposite conclusions under similar circumstances. "[A]pplication of agency standards in a plainly inconsistent manner across similar situations evinces such a lack of rationality as to be arbitrary and capricious." *Zhao v. U.S. Dep't of Justice*, 265 F.3d 83, 95 (2d Cir. 2001). The Board on many occasions has granted motions to reopen based on children born

subsequent to initial asylum proceedings. *See, e.g.*, *In re X-G-W-*, 22 I. & N. Dec. 71 (BIA 1998) (reopening proceedings based on Congress's 1996 amendment of the statutory term "refugee" to include a person persecuted through coercive population control measures), *superseded on other grounds by In re G-C-L-*, 23 I. & N. Dec. 359 (BIA 2002); *In re Lu,* No. A 70 100 687 (BIA March 10, 2000) (Aird affidavit "establishe[s] *prima facie* eligibility for relief"); *In re Qing Zhang*, No. A 73 148 366 (BIA Nov. 15, 2001) (granting motion to reopen based on statement by the applicant); *In re Weng*, No. A75 990 618 (BIA July 18, 2003) (granting motion to reopen under similar circumstances); *In re Zhang and Huang*, No. A77 551 826 (BIA July 16, 2003) (sustaining petitioner's appeal of IJ's denial of asylum under similar circumstances).

These decisions overwhelmingly deem allegations like Guo's sufficient to establish *prima facie* eligibility for asylum. And while the Government argues that Guo's case is distinguishable "given the paucity of facts alleged in her motion to reopen," applicants in many prior cases did not cite more specific evidence than did Guo. Furthermore, some submitted less than Guo. We thus conclude that the Board erred in finding that Guo presented insufficient evidence to establish her *prima facie* case.

**Conclusion**

The Board's cursory rejection of Guo's motion to reopen was improper. It

failed to explain how the IJ's adverse credibility finding bears any relation to Guo's claim, based on physician-verified evidence of pregnancy and a third-party affidavit, that she feared persecution relating to China's family planning policy. Moreover, it seems likely that the Board applied the wrong standard in evaluating the motion to reopen. Guo made a *prima facie* case: she presented facts showing a reasonable likelihood that she would prevail on the merits, particularly in light of prior Board decisions granting relief under similar circumstances. We thus grant Guo's petition for review and remand for further proceedings consistent with this opinion.