

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-24-2006

# Zheng v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1796

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Zheng v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1053.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1053

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-1796

MEI RONG ZHENG,
                                        Petitioner

v.

ALBERTO GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
                                        Respondent

On Petition for Review of a Decision and Order of the
Board of Immigration Appeals
BIA No. A95-170-204
(U.S. Immigration Judge: Honorable Miriam K. Mills)

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 27, 2006

Before:  SCIRICA, *Chief Judge*, NYGAARD and ALARCÓN*, *Circuit Judges*

(Filed:  May 24, 2006 )

OPINION OF THE COURT

---

*The Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Judicial
Circuit, sitting by designation.

SCIRICA, *Chief Judge*.

Mei Rong Zheng petitions for review of the Board of Immigration Appeals' order denying asylum. Because the Immigration Judge's adverse credibility determination is supported by substantial evidence, we will deny the petition for review and affirm the Board's order.

I.

Zheng, a native and citizen of the People's Republic of China, entered the United States illegally. Removal proceedings began with a Notice to Appear served in December 2001. At her February 2002 hearing, Zheng admitted the allegations in the Notice, conceding she was subject to removal. The IJ continued the hearing until December 11, 2003, to address her application for asylum, withholding of removal, and protection under the Convention Against Torture. At the December 11 hearing, the IJ found Zheng was not credible and accordingly denied her applications for relief and granted her application for voluntary departure. Zheng timely appealed to the Board, which adopted and affirmed the IJ's decision in a short per curiam order on February 8, 2005. This timely petition for review followed, challenging only the denial of the asylum application.

In her asylum claim, Zheng alleges she became pregnant in China in 1999 when she was 20 years-old and when her boyfriend was 22, and that they were denied a marriage certificate because of their ages. She contends she was then forced by local officials to abort her pregnancy because she was unwed, offering an unauthenticated "abortion certificate" to substantiate her claim. The government relied on an

2

investigative report by the U.S. Consulate in China that concluded the abortion certificate was fabricated, on the Department of State's *Country Report on Human Rights–China* (2002), and on the U.S. Department of State's *China: Profile of Asylum Claims and Country Conditions* (1998). After comparing her testimony to these reports, the IJ found Zheng was not credible and her story was implausible.

## II.

We have jurisdiction to review a final order of removal from the Board under sections 242(b)(2) and (d) of the Immigration and Nationality Act, 8 U.S.C. §§ 1252(b)(2), (d). When the Board adopts and affirms the decision of the IJ, we review the IJ's opinion. *Wang v. Attorney Gen.*, 423 F.3d 260, 267 (3d Cir. 2005).

An IJ's findings of fact in support of a denial of asylum, including adverse credibility determinations, are reviewed for substantial evidence. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). Such findings must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole. *E.g.*, *Guo v. Ashcroft*, 386 F.3d 556, 561 (3d Cir. 2004). The petitioner's "evidence of credibility must be so strong in his favor that in a civil trial he would be entitled to judgment on the credibility issue as a matter of law." *He Chun Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004).

The Attorney General may grant asylum to a person who is a "refugee," a status that turns on the alien showing that she suffered past persecution for several enumerated reasons, or, that she has a well-founded fear of such persecution on return to her country

3

of origin. *See* 8 U.S.C. § 1101(a)(42)(A). The term "refugee" includes a person who "has been forced to abort a pregnancy or to undergo involuntary sterilization" or who has a well-founded fear she will be forced to undergo such procedures on return to her country. § 1101(a)(42)(B). The burden of proof rests on the applicant. *He Chun Chen*, 376 F.3d at 221.

## III.

Zheng presents several different issues on appeal. In sum, she alleges error with the IJ's decision that Zheng's asylum claim suffers from a failure of credibility, from implausibility, and from a want of corroboration.

Inconsistencies between the asylum application and hearing testimony can support an IJ's adverse credibility finding. *See, e.g.*, *Xin Jie Xie v. Ashcroft*, 359 F.3d 239, 243 (3d Cir. 2004). The IJ concluded Zheng's testimony was inconsistent with her asylum application. For example, Zheng testified her mother had been forcibly sterilized. In assessing her credibility, the IJ found Zheng's failure to mention this purported forced sterilization in her asylum application significant. Because Zheng claims her fear of future sterilization is based on her mother's purported history of forced sterilization (for having too many children), her failure to mention this in her application is an important inconsistency. *Id.* ("One of the principal inconsistencies and omissions discussed by the BIA as supporting the IJ's finding of lack of credibility was Xie's failure to mention in his written asylum application that his wife had been sterilized.").

4

The IJ also concluded her testimony was not consistent with U.S. government reports concerning country conditions. *See Zubeda v. Ashcroft*, 333 F.3d 463, 477–78 (3d Cir. 2003) (explaining country reports are "the most appropriate and perhaps the best resource for information on political situations in foreign nations") (internal quotation and citation omitted). The IJ found her testimony was inconsistent with the Country Report and the Asylum Profile concerning China's forced-abortion policies, the issuance of abortion certificates, and the age requirements for marriage.

The Country Report stated the central government did not authorize physical force to make people submit to abortions or sterilizations. The IJ found her not credible because a country whose official policy is no longer to force abortions is not likely to provide the victim proof of the offense. The Asylum Profile also stated that "abortion certificates" are often confused with medical documents issued for employment leave purposes to women who *voluntarily* have an abortion. The IJ concluded a hospital would likely not issue an "abortion certificate" if the abortion were forced or if Zheng were unemployed (a fact to which she had testified). Finally, the Asylum Profile stated the minimum legal marital age was 20 years for a woman and 22 years for a man. Zheng failed to support her claim of 22 years and 24 years for women and men respectively, or to show her locality enforced a higher age minium than that listed in the Asylum Profile.

In sum, the IJ properly relied on the Country Report and Asylum Profile in finding the abortion certificate did not conclusively demonstrate Zheng had an abortion, and, assuming she had an abortion, in finding the abortion was unlikely to have been forced.

5

The reports also support an adverse credibility determination based on the age at which she asserts one may marry in China. The credibility determination is therefore supported by substantial evidence.

The IJ's determination that her narrative was implausible is supported by the same substantial evidence. The IJ asked her for evidence her abortion was not voluntary, an important proof because Zheng had testified she was an unwed single woman purportedly too young for marriage. She offered no evidence other than the abortion certificate. This lack of evidence, and evidence her community frowned upon unwed mothers, could lead to a conclusion her abortion was voluntary. *See Xia Yue Chen v. Gonzales*, 434 F.3d 212, 219 (3d Cir. 2005) ("[T]he existence of a hospital-issued abortion certificate might support a reasonable inference that the abortion attested to in the certificate was voluntary and not procured by government force."). Substantial evidence supports the IJ's finding.

An IJ may require applicants for asylum "to supply corroborating evidence in order to meet their burden of proof." *Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir. 2001). Under the Board's three-part analysis corroboration requires: (1) identification of the facts for which it is reasonable to expect corroboration, (2) the presence or absence of such corroboration in the record, and (3) the adequacy of the applicant's explanation for its absence. *Xia Yue Chen*, 434 F.3d at 220 (citing *Abdulai*, 239 F.3d at 554).

As noted, Zheng failed to provide any corroboration for the forced abortion other than the abortion certificate, which the U.S. Consulate's investigation report found had been fabricated and which might only have proved the fact of an abortion and not that the

6

abortion was forced.  The IJ found Zheng could have rebutted the investigation report by providing an authenticated version of the document, but she failed to do so.  The IJ also asked why Zheng did not offer a statement from her mother, who had allegedly mailed the abortion certificate to Zheng.  *See id.* ("The IJ properly found that there were lines of communication open between Chen and China, and there was no real attempt to explain the absence of corroboration.").

The IJ properly considered the lack of corroborating evidence apparent in Zheng's application.[1]  Substantial evidence supports the IJ's finding that there was no reliable proof Zheng suffered past persecution.  The IJ also held Zheng had not sufficiently demonstrated a well-founded fear of future persecution on the basis of China's family planning policies, or on the basis of having illegally exited China.  Substantial evidence similarly supports these findings.

---

[1]Finding a lack of credibility and finding a failure of proof because of lack of corroboration are independent analyses.  *See Abdulai v. Ashcroft*, 239 F.3d 542, 551 n.6 (3d Cir. 2001) ("A failure of proof is not a proper ground per se for an adverse credibility determination. The latter finding is more appropriately based upon inconsistent statements, contradictory evidence, and inherently improbable testimony.").  But any mistake the IJ made in its analysis is not sufficient for us to grant the petition.  In *Xia Yue Chen v. Gonzales*, we denied the petition for review for an asylum applicant alleging a forced abortion in China, despite an IJ who seemingly "impermissibly blurred the line between the credibility of a claimant and the adequacy of proof to support the claim of asylum."  434 F.3d 212, 219 (3d Cir. 2005).  In that case, as here, "both the Country Report's conclusion that forced abortion is not governmental policy in China, coupled with the almost total lack of corroboration of [the applicant's] story, constitutes substantial evidence sufficient to deny the petition for review."  *Id.* at 221–22

Zheng fears persecution in China because of its "one-child" policy and because she wants more children. Zheng and her husband—who is also in removal proceedings and has been ordered removed—now have a female child born in the United States. The IJ found no evidence China's population control policy covers U.S.-citizen children, and even found evidence that parents of U.S.-citizen children are favorably treated. Additionally, the Country Report and Asylum Profile state that in agricultural households like Zheng's, a second child is permitted if the first is female.

Zheng also claims that because she left China illegally, she would be put in prison were she to return. First, "[c]riminal prosecution for illegal departure is generally not considered to be persecution," *Li v. INS*, 92 F.3d 985, 988 (9th Cir. 1996), and the exception—that more severe punishment would attach for her than for any other violator of China's immigration law—does not appear to apply. Second, the Country Report, which Zheng does not refute, states that only people who have been smuggled out of China more than once face a possibility of administrative or criminal penalties.

We conclude the IJ's determination that Zheng was not credible—and that the weight of the evidence did not support Zheng's claims that the alleged 1999 abortion was involuntary—is supported by substantial evidence.

IV.

For the foregoing reasons, we will deny the petition for review and affirm the order of the Board.

8