YONG GUI WANG, Petitioner

v.

ATTORNEY GENERAL OF
the UNITED STATES,
Respondent.

No. 09–1032.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) May 10, 2010.

Opinion Filed: July 1, 2010.

Michael A.O. Brown, Esq., Law Office of Michael Brown, New York, NY, for Petitioner.

Thomas W. Hussey, Esq., Justin R. Markel, Esq., Timothy B. Stanton, Esq., United States Department of Justice, Washington, DC, for Respondent.

Before: BARRY, ROTH, Circuit Judges and HILLMAN,* District Judge.

## OPINION

BARRY, Circuit Judge.

Yong Gui Wang seeks review of the Board of Immigration Appeals' ("BIA") denial of his motion to reopen. We will deny the petition.

## I.

Because we write solely for the parties, we discuss only the facts relevant to our analysis.

---

Wang is a native and citizen of China. He entered the United States in 2003 and applied for asylum, withholding of removal, and relief under the U.N. Convention Against Torture ("CAT") based on the 2002 forced abortion of his then-girlfriend Sai Hua Li and his opposition to that abortion, opposition that resulted in him being punched by family planning officials.

After consolidating Wang's case with Li's, the Immigration Judge ("IJ") granted Li relief, but made an adverse credibility determination as to Wang and denied him relief. The IJ found that Wang embellished his story by, among other things, making up a threat of sterilization. The BIA affirmed.

Between his removal proceedings and his motion to reopen, Wang separated from Li and began dating his wife, Ai Min. Wang and Min were, at the time of Wang's motion to reopen, the parents of one child born in 2007 and expecting a second child. In addition, Min introduced Wang to Falun Gong, a spiritual movement with purported health benefits.

Based on those developments, Wang filed a timely motion to reopen. The motion was premised on his fear of future persecution because: (1) he fathered one child with Min and was expecting another; and (2) he converted to and was involved with Falun Gong. In support of his motion, Wang relied on, among other things, a letter from his father and a notice from his home village ("Village Notice").

The letter from Wang's father states that "some fellow villagers from my hometown, who were living in New York" witnessed Wang at Falun Gong activities and learned of Wang's first child and his wife's second pregnancy. (A366.) Those villagers

* Honorable Noel L. Hillman, United States District Judge for the District of New Jersey, sitting by designation.

relayed those stories to "other fellow villagers" who were visiting the United States, and that second group of villagers reported Wang's activity to the Chinese government. *(Id.)* Armed with that information, "several government cadres rushed" to Wang's father's house and informed him that Wang "must have sterilization," will "receive other punishments," and will be punished "very severely." *(Id.)*

The Village Notice also recounts Wang's purported violation of China's family planning policy and "evil cult" practices, and states that, on his return to China, Wang will be sterilized and "receive other punishments." (A375.)

Because Wang failed to establish prima facie eligibility for asylum, withholding of removal, or protection under CAT, the BIA denied his motion to reopen. In so doing, the BIA applied the IJ's prior adverse credibility determination to his motion to reopen. Importantly, however, the BIA also rejected the motion on alternative grounds unrelated to the credibility determination.

## II.

### A.

The BIA had jurisdiction over Wang's motion to reopen under 8 C.F.R. § 1003.2. We have jurisdiction pursuant to 8 U.S.C. § 1252.

In a motion to reopen, an alien must make a prima facie showing that he is entitled to asylum or similar relief. *Guo v. Ashcroft,* 386 F.3d 556, 563 (3d Cir.2004). That showing includes "objective evidence showing a reasonable likelihood" that relief is warranted. *Sevoian v. Ashcroft,* 290 F.3d 166, 175 (3d Cir.2002) (quotation omitted).

When the BIA concludes that an alien has failed to make a prima facie showing,

we review the BIA's findings of fact for substantial evidence and the BIA's ultimate decision to deny the motion to reopen for abuse of discretion. *Id.* at 174. Under the substantial evidence standard, we must uphold the BIA's factual findings unless the evidence compels a contrary conclusion. *Wong v. Att'y Gen.,* 539 F.3d 225, 230 (3d Cir.2008). Under the abuse of discretion standard, we will not disturb a BIA decision unless it is "arbitrary, irrational, or contrary to law." *Tipu v. INS,* 20 F.3d 580, 582 (3d Cir.1994). "As a general rule, motions to reopen are granted only under compelling circumstances," and, accordingly, "our review is highly deferential." *Guo,* 386 F.3d at 561–62.

### B.

Although Wang does not challenge the BIA's application of the IJ's adverse credibility determination to its analysis of his motion to reopen, we would be remiss if we did not address the issue.

In *Guo,* we held that an immigration judge "must justify each adverse credibility finding with statements or record evidence specifically related to the issue under consideration." *Id.* at 562. There, Jian Lian Guo sought asylum on the basis of religious persecution. The immigration judge found Guo to be incredible and denied asylum. The BIA affirmed. Guo, as Wang here, filed a motion to reopen based on intervening developments, specifically the birth of her first child and her second pregnancy and, accordingly, sought asylum based on China's family planning policy. The BIA denied the motion to reopen, stating that Guo "failed to meaningfully address the negative credibility determinations noted in the Immigration Judge's decision." *Id.* at 560.

We granted Guo's petition for review and concluded that the BIA erred because

Guo's religious persecution claim was "utterly unrelated" to her family planning claim. *Id.* at 562. "Guo's credibility (or lack thereof) for religious persecution simply is not relevant to her motion to reopen in this case, which relied principally on the fact of her second pregnancy in contravention of China's one-child policy and on China's practice of persecuting those who violate the policy." *Id.*

■ Here, with respect to Wang's family planning claim, the BIA gave "little weight to" Wang's father's letter and the Village Notice because of the IJ's "adverse credibility finding regarding [Wang's] coercive population control ... claim." (A1 (internal citation omitted).) Although Wang's original asylum application and current motion to reopen are both premised on China's family planning policy, they are nonetheless distinguishable. Wang's asylum application concerns the events surrounding his former girlfriend's abortion—events from 2003 that occurred solely in China. His motion to reopen relates to the birth of his first child and his wife's pregnancy with their second child, events beginning in 2007. Although similar, those claims are sufficiently distinct to require a credibility determination to be made anew, premised on record evidence specifically related to the issue under consideration.

The BIA also extended the IJ's adverse credibility determination to Wang's claim of religious persecution. That, too, was in violation of *Guo*—which, as here, concerned a religious persecution claim and an unrelated family planning claim.

### C.

Because we conclude that the BIA was not entitled to rely on the IJ's prior, unrelated adverse credibility determination, we evaluate the BIA's alternative bases for denying Wang's motion to reopen.

### i.

■ With respect to Wang's claim premised on China's family planning policy, the BIA buttressed its rejection of the unspecified threats against Wang detailed in Wang's father's letter and the Village Notice by noting that those documents conflicted with the Country Report submitted by Wang, which stated that United States officials were not aware of an official policy in China—at the national or local level—mandating the sterilization of a parent of two children born abroad. (A1 (citing A.R. 417).) Wang contends that the BIA gave too much weight to the Country Report. That argument fails. We have "repeatedly recognized that State Department reports may constitute substantial evidence." *Yu v. Att'y Gen.*, 513 F.3d 346, 349 (3d Cir.2008). Because the Country Report submitted by Wang provides substantial evidence supporting the BIA's decision, the BIA did not abuse its discretion in weighing the evidence relevant to Wang's family planning policy claim.

### ii.

■ With respect to Wang's claim premised on religious persecution, the BIA stated: "Even were we to credit the [V]illage [N]otice, it does not state any specific punishment for [Wang]'s Falun Gong activities in the United States." (A2.) Indeed, the Village Notice merely states that Wang would be subject to "other punishments." (A375.) We find no error in the BIA's conclusion.

Wang's father's letter sets forth equally vague punishments that Wang may face on his return to China. (A366 (noting that Wang may "receive other punishments" and that he would be punished "very severely").) Despite the BIA's failure to

mention the father's letter in its discussion of Wang's religious persecution claim, we find no error in the lack of such an express discussion for the BIA need not parse or write on each piece of evidence considered. *See Abdulai v. Ashcroft,* 239 F.3d 542, 549–50 (3d Cir.2001).

██ The Country Report submitted by Wang notes that Falun Gong adherents "may still be undergoing criminal, administrative, and extra-judicial punishments for engaging in Falun Gong practices." (A.R. 398.) That language does not, however, suggest—let alone compel—a finding that Wang himself would suffer such a fate, nor that such "punishments" rise to the level of persecution. Accordingly, and ultimately, the BIA did not abuse its discretion in denying the motion to reopen.

### III.

For the foregoing reasons, we will deny the petition for review.