**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1016
_____

SURINDER SINGH,
                              Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
                              Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A087-998-807)
Immigration Judge:  Honorable Ramin Rastegar
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 2, 2018

Before: JORDAN, RESTREPO and SCIRICA, Circuit Judges

(Opinion filed: July 6, 2018)
_____

OPINION*
_____

PER CURIAM

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Surinder Singh petitions pro se for review of the Board of Immigration Appeals' (BIA) order dismissing his appeal from an immigration judge's (IJ) decision ordering his removal and denying his application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). For the reasons that follow, we will deny his petition.

I.

Singh is a citizen of India who arrived in the United States in 2010. Upon his arrival at the border in Texas, he was charged with being removable for not possessing valid entry documents. See 8 U.S.C. § 1182(a)(7)(A)(i)(I). Several weeks later, Singh was given a credible fear interview by an asylum officer, to whom Singh expressed a fear of returning to India.

Once in removal proceedings, Singh, through counsel, conceded his removability but applied for asylum, withholding of removal, and relief under the CAT. In support of his application, Singh alleged the following account. When he was fifteen years old, Singh joined the Akali Dal political party, which was opposed to the Congress party. He realized as a teenager that he was sexually attracted to men, and before he left India he had a secret sexual relationship with a male friend from school, who was the only person who knew about Singh's sexual orientation. In March 2010, he was engaging in a sexual act with his friend in a farmhouse when members of the Congress party discovered them and beat them. Singh's attackers kidnapped them and locked them in a room. After a few hours, Singh and his friend were able to break out of the room and run to a police

2

station. The police officers threatened Singh because of his political affiliation when he arrived at the station. His attackers arrived at the police station shortly after they did and reported that Singh and his friend had been engaged in sexual activity. Upon hearing this, the police officer who was in charge became enraged, beat Singh and his friend, and warned them that if they continued their sexual relationship, they would be arrested and likely killed. Singh was detained until his father paid a bribe for his release the next day. He was then hospitalized for about a week. Several days after he was released from the hospital, Singh left India.

An IJ held a hearing on the merits of Singh's application and subsequently issued a written decision denying all relief. The IJ determined that Singh's testimony was not credible and that he had failed to adequately corroborate his claim; thus, Singh was not entitled to asylum. The IJ concluded that because Singh's asylum claim failed, his withholding of removal claim necessarily failed. Finally, the IJ determined that Singh was not entitled to CAT relief because he had not shown that he would likely be subjected to torture if he returned to India.

The BIA dismissed Singh's subsequent appeal, affirming the IJ's adverse credibility determination and denial of all forms of requested relief. The BIA concluded that because Singh had failed to challenge the IJ's corroboration finding in his appeal, it would not disturb the IJ's conclusion. Singh timely petitioned for review.

## II.

We have jurisdiction to review Singh's final order of removal pursuant to 8 U.S.C.

§ 1252(a)(1).  Where, as here, the BIA affirmed and partially reiterated the IJ's discussions and determinations, we review both decisions.  See Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009).  We review the agency's factual findings for substantial evidence.  See Chen v. Gonzales, 434 F.3d 212, 216, 220 (3d Cir. 2005).  Under this deferential standard of review, we must uphold those findings "unless the evidence not only supports a contrary conclusion, but compels it."  Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001).

An applicant for asylum has the burden of credibly and persuasively establishing that he is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A); see 8 C.F.R. § 1208.13(a); Abdille, 242 F.3d at 482.  Under the REAL ID Act of 2005, an IJ may assess an applicant's credibility based on "the totality of circumstances, and all relevant factors," including:

> the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's . . . account, the consistency between the applicant's . . . written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1229a(c)(4)(C); see also Abulashvili v. Att'y Gen., 663 F.3d 197, 202 n.7 (3d

4

Cir. 2011).

Singh primarily contests the agency's determination that his testimony was not credible. The agency's adverse credibility determination relied primarily on what it described as a "central omission": Singh told the asylum officer at his credible fear interview that Congress party members attacked and kidnapped him solely because of his political opinion, and that they then falsely accused him and his friend of engaging in a sexual act so that the police would attack them as well, in contrast to his later account in his asylum application and at his hearing before the IJ. A.R. at 39. Singh's explanation for this inconsistency at his hearing was that he was confused and scared after traveling through the jungle to the United States several weeks prior, which the IJ found to be insufficient because the asylum officer had told Singh how important it was to be truthful in the interview and that it could be his only opportunity to explain what had happened to him. A.R. at 39.

The IJ also described numerous other inconsistencies, including that: (1) Singh's account of his injuries from the attacks conflicted with the medical document he submitted to support his application, and when he was asked to clarify a discrepancy he remained silent; (2) Singh stated in his asylum application and his hearing testimony that the police officer who beat him first threatened him because of his political party membership and told him to leave his party before the Congress party members arrived, but did not include this information in his original asylum statement; and (3) Singh's hearing testimony about when he told his brother about his sexual orientation directly

5

conflicted with his brother's testimony. The IJ described Singh's "overall demeanor" as "unpersuasive" and found his testimony to be "vague and non-responsive" during the hearing. A.R. at 42. Finally, the IJ found that several elements of Singh's narrative account of the day that he was attacked to be "inherently implausible."[1] A.R. at 43.

Singh argues on appeal that the BIA failed to consider the totality of the circumstances when it made its adverse credibility determination. He maintains that he was afraid and ashamed of his identity at his credible fear interview, that he grew up in a rural community and received less than a high school education, and that he was unrepresented by counsel at his interview. He also claims that the medical document inconsistency must have been due to a typographical error on the document he submitted, although he does not address his silence to the IJ's question about this issue. He argues that the inconsistency with his brother's testimony is trivial as it was an easy detail to forget and thus should not have been considered. He also argues that the IJ's plausibility analysis is speculative.

Based on the "totality of the circumstances" and "all relevant factors," substantial evidence supports the agency's conclusion. The record contains numerous significant discrepancies, and we agree that Singh's explanations for them do not compel disturbing the agency's determination. See Alimbaev v. Attorney Gen. of United States, 872 F.3d

---

[1] Specifically, the IJ noted that Singh had not plausibly explained how Congress party members discovered him and his friend in the farmhouse, or how Singh's alleged attackers arrived at the police station so soon after Singh and his friend arrived without being seen while Singh and his friend fled. See A.R. at 43.

188, 196 (3d Cir. 2017) ("[W]hen our Court is called to evaluate an IJ's credibility determination that has been adopted by the BIA, we do so with exceptional deference"). The agency's adverse credibility determination is a sufficient basis on which to deny Singh's asylum claim.[2] See Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir. 2003) ("An alien's credibility, by itself, may satisfy his burden, or doom his claim."). The agency also correctly determined that Singh's withholding of removal claim necessarily failed because his asylum claim failed. See Guo v. Ashcroft, 386 F.3d 556, 561 n.4 (3d Cir. 2004).

Finally, Singh argues that the IJ's adverse credibility determination should not have affected the adjudication of his CAT claim and contends that the other evidence he presented should have been sufficient to grant him CAT relief. A petitioner may establish his eligibility for CAT relief based on evidence independent of his testimony. See Tarrawally v. Ashcroft, 338 F.3d 180, 188 (3d Cir. 2003). Here, however, the relevance of the country conditions and other background documentation Singh put forward depends on his credible testimony. See A.R. at 4. The other evidence alone does not substantiate a claim that Singh would face torture if he returned to India. Because Singh has not suggested that he might be tortured for reasons unrelated to his asylum and withholding of removal claims, we conclude that the agency properly denied his CAT

---

[2] Although Singh also challenges the IJ's conclusion that he had insufficiently corroborated his claims in his briefing, he did not argue this issue before the BIA in his counseled brief. See A.R. at 7-19. We cannot address his argument, as he waived it by failing to raise it before the BIA. See Abdulrahman v. Ashcroft, 330 F.3d 587, 595 (3d Cir. 2003).

claim.  Cf. Mansour v. I.N.S., 230 F.3d 902, 908 (7th Cir. 2000) (concluding that a "prior adverse credibility determination [was] not necessarily significant" where a petitioner's asylum claim was based a different ground than his CAT claim).

Accordingly, we will deny Singh's petition for review.