**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 17-2090

————————

CHATARDEEP SINGH,

Petitioner

v.

THE ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,

Respondent

—————————————————————

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A205-942-183)
Immigration Judge: Honorable Charles M. Honeyman

—————————————————————

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 8, 2018

Before: GREENAWAY, JR., BIBAS, and ROTH <u>Circuit</u> <u>Judges</u>

(Opinion filed: September 26, 2018)

————————

OPINION[*]

————————

PER CURIAM

Chatardeep Singh petitions pro se for review of the Board of Immigration

Appeals' ("BIA") final order of removal. We will deny the petition.

—————————————————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Singh is a citizen of India who arrived in the United States in 2013. Upon his arrival, he was charged with being removable for not possessing valid entry documents, see 8 U.S.C. § 1182(a)(7)(A)(i)(I), and was interviewed by a border patrol agent. During this "border interview," Singh expressed his fear of returning to India.

Once in removal proceedings, Singh conceded his removability and applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). In support of that application, Singh alleged that, on two occasions in 2013, he was attacked and beaten in India for supporting the country's Mann party. The Immigration Judge ("IJ") held a hearing on the merits of the application and subsequently issued a written decision denying all relief. With respect to Singh's asylum claim, the IJ determined that Singh's testimony was not credible, and that Singh had not provided sufficient corroborating evidence to overcome the deficiencies in that testimony.[1] Next, the IJ explained that, because Singh's asylum claim failed, his withholding of removal claim necessarily failed, too. Lastly, the IJ denied Singh's CAT claim, concluding that Singh had not shown that he would likely be tortured if he returned to India.

Singh appealed from the IJ's decision. The BIA dismissed that appeal in April 2017, upholding the IJ's adverse-credibility and insufficient-corroboration findings, and

---

[1] Although the IJ gave alternative reasons for denying Singh's asylum claim, we need not consider those reasons here. As we explain in Section II of this opinion, Singh has not demonstrated that the IJ's adverse-credibility determination or the IJ's insufficient-corroboration finding should be disturbed.

concluding that Singh had waived any challenge to the IJ's denial of his CAT claim by failing to "meaningfully challenge[]" that denial on appeal. (A.R. at 3 n.1.) This timely petition for review followed.

## II.

We have jurisdiction to review Singh's final order of removal pursuant to 8 U.S.C. § 1252(a)(1). We review the agency's factual findings, including its adverse-credibility and insufficient-corroboration determinations, for substantial evidence. See Chen v. Gonzales, 434 F.3d 212, 216, 220 (3d Cir. 2005). Under this deferential standard of review, we must uphold those findings "unless the evidence not only supports a contrary conclusion, but compels it." Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001).

We begin our review with the agency's determination that Singh's testimony was not credible. When, as here, the agency proceedings are governed by the REAL ID Act, the agency's adverse-credibility determination "can be based on inconsistencies, inaccuracies, and other factors, irrespective of whether they go to the heart of an applicant's claim." Abulashvili v. Att'y Gen., 663 F.3d 197, 202 n.7 (3d Cir. 2011) (citing 8 U.S.C. § 1158(b)(1)(B)(iii)). Here, the agency's adverse-credibility determination principally relied on the following three points: (1) Singh's hearing testimony conflicted with both his application and his border interview regarding the route by which he traveled from India to the United States;[2] (2) Singh testified that he had

_____

[2] At the hearing, Singh testified that his air travel from India ended in Nicaragua, where he forfeited his passport and proceeded to travel through Guatemala and Mexico before

3

been hospitalized after the second alleged beating, but he stated during his border interview that he had *not* been hospitalized;[3] and (3) Singh made inconsistent statements during his testimony regarding an individual named Ravinder Singh Laddi.[4]

Singh has not demonstrated that substantial evidence compels disturbing the agency's adverse-credibility determination. We reach this conclusion notwithstanding

---

reaching the United States. However, in both his application and during the border interview, he made no mention of Nicaragua, instead stating that he had traveled to Guatemala from Colombia. Although the IJ acknowledged that Singh "does not speak Spanish and [that] it is plausible that he would not understand many details about where he was, and when," the IJ determined that this possibility "does not adequately explain th[is] discrepancy . . . or [Singh's] assertion that his more recent explanation is accurate." (A.R. at 49.) The IJ noted that this discrepancy "harm[ed] [Singh's] credibility" but was "not fatal to a favorable credibility finding[,] as its substance is not material to [his] asylum claim." (Id.)

[3] The border patrol agent asked Singh, "Did you go to the hospital for your injuries?" (A.R. at 816.) Singh replied, "No[,] I never went to the hospital." (Id.) At the immigration hearing, Singh testified that he was nervous and tired when he made that statement. Although the IJ acknowledged that Singh's "fear, nervousness, and fatigue from his travels may have affected his statements during his [border] interview," the IJ observed that "the rest of [Singh's] statements during the interview were consistent with his testimony and his asylum application, indicating that he did understand the questions and was lucid enough to answer them." (Id. at 50.) Additionally, the IJ noted that Singh had signed a document memorializing his border interview answers, and that Singh did not question the accuracy of that document or the interpreter's translation of the interview.

[4] Laddi allegedly is a leader within the Mann party, and a letter purportedly prepared by him was submitted in support of Singh's application. However, when Singh was asked during the immigration hearing if he knew of anyone with Laddi's name, Singh initially indicated that he had met an individual with that name in Mexico. Singh then repeatedly testified that he did not know anyone in India with that name. It was only after the IJ referenced Laddi's letter that Singh identified Laddi as a Mann party leader. When the IJ asked Singh to explain why he had given inconsistent testimony on this point, Singh claimed that he initially thought the interpreter had said the name "Sakvinder" Singh Laddi. The IJ was unpersuaded by this explanation, noting that the interpreter had "clearly enunciated the name and . . . spelled it out for [Singh]." (A.R. at 50.)

4

his complaints about the agency's invocation of statements that he made during his border interview. To be sure, "we have counseled against placing too much weight on [a border] interview, especially when the IJ and BIA lack important information as to the manner in which the interview was conducted." Chen v. Ashcroft, 376 F.3d 215, 223-24 (3d Cir. 2004). But here, only one of the three inconsistencies relied upon by the agency truly hinged on Singh's border interview. The discrepancy regarding Laddi's identity had nothing to do with Singh's border interview, and the discrepancy regarding Singh's route to the United States was present not only between his border interview and his hearing testimony, but also between his *asylum application* and his hearing testimony. Under "the totality of the circumstances," 8 U.S.C. § 1158(b)(1)(B)(iii), we cannot conclude that Singh's border interview played an improper role in the agency's adverse-credibility determination. Compare Chen, 376 F.3d at 223-26 (upholding agency's adverse-credibility determination that was based, in part, on inconsistencies between the alien's border interview and his hearing testimony), with Fiadjoe v. Att'y Gen., 411 F.3d 135, 159 (3d Cir. 2005) (noting that an inconsistency between an alien's border interview and his hearing testimony is not sufficient, *standing alone*, to support an adverse-credibility finding).

We next examine the agency's insufficient-corroboration finding. Singh's documentary evidence included (1) a letter from the hospital that allegedly treated him after the second attack, (2) affidavits from his family members and other individuals in India, and (3) background evidence regarding conditions in India. The agency concluded

that this evidence was insufficient to overcome the adverse-credibility determination.  In support of this conclusion, the agency explained that (1) the letter from the hospital carried only limited weight because it was dated about two years after Singh's alleged hospitalization; (2) the affidavits were entitled to only limited weight "because they do not appear to reflect first-hand knowledge of the alleged attacks against [Singh]"; and (3) Singh's "country conditions evidence includes multiple articles from many years ago and does not corroborate his allegations regarding poor treatment currently."  (A.R. at 5-6.)  Singh has failed to show that substantial evidence compels disturbing these findings.

In light of the above, Singh's challenge to the agency's denial of his asylum claim lacks merit.  And because he failed to meet the standard for asylum, the agency correctly determined that his claim for withholding of removal necessarily failed, too.  See Guo v. Ashcroft, 386 F.3d 556, 561 n.4 (3d Cir. 2004).  All that remains, then, is his CAT claim.  On July 19, 2017, we directed the parties to address the following issues in their respective briefs:  (1) whether the BIA had erred in concluding that Singh had waived his CAT claim, and (2) whether any such error should be deemed harmless.  Singh's brief, filed in November 2017, does not address either of these issues.  Furthermore, beyond noting that he wishes to challenge the BIA's disposition of his CAT claim, his brief does not raise *any* argument with respect to that claim.  Accordingly, Singh has waived any challenge to the agency's resolution of his CAT claim.  See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in [his] opening brief, and for those purposes a passing

reference to an issue will not suffice to bring that issue before this court.") (internal

quotation marks and ellipses omitted); <u>see also</u> <u>Chen v. Ashcroft</u>, 381 F.3d 221, 235 (3d

Cir. 2004) (applying waiver doctrine to immigration case); <u>Emerson v. Thiel Coll.</u>, 296

F.3d 184, 190 n.5 (3d Cir. 2002) (per curiam) (applying waiver doctrine to pro se case).

Based on the foregoing, we will deny Singh's petition for review.