

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-27-2006

# Diabate v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4609

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Diabate v. Atty Gen USA" (2006). *2006 Decisions.* Paper 157.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/157

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-4609

BAKARY DIABATE,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

Petition for Review of an Order
of the Board of Immigration Appeals
(No. A97-152-365)
Immigration Judge:  Honorable Henry S. Dogin

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 7, 2006

Before: SCIRICA, *Chief Judge*,  BARRY and ALDISERT, *Circuit Judges*

(Filed: November 27, 2006)

OPINION OF THE COURT

ALDISERT, *Circuit Judge*

Bakary Diabate, a native and citizen of Ivory Coast, petitions for review of the

order of the Board of Immigration Appeals ("BIA"). The BIA affirmed without opinion

the Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal and relief under the Convention Against Torture ("CAT"). We have jurisdiction to review the BIA's order pursuant to 8 U.S.C. § 1252. We will deny the petition.

I.

The parties are familiar with the facts and proceedings before the BIA and the IJ, and so we will revisit them only briefly. Petitioner testified that while living in Ivory Coast he was persecuted because he is a member of the RDR political party and the Dioula, or Jula, tribe. Petitioner alleges that his problems began on or about December 29, 2000. In his brief, he states that he was arrested in the afternoon of that day while working in his store, after which he was detained and tortured at a police station for approximately one week, suffering beatings that left scars on his face. He alleges that he was re-arrested on January 10, 2001, and that he was detained for three days and again beaten. He further alleges that police officers murdered his father on account of his father's RDR membership. He argues that he would suffer further persecution if forced to return to Ivory Coast.

Petitioner came to the United States in 2002, leaving behind his wife and two children, who now reside in Senegal. He entered without inspection, posing as a seaman. The INS issued him a Notice to Appear on August 13, 2002, and Petitioner filed for asylum, withholding of removal and relief under CAT on April 24, 2003. The IJ rejected his claims, and the BIA affirmed without opinion.

2

## II.

Petitioner's appeal boils down to an argument that the IJ erred in not crediting his account of persecution. In this case, where the BIA affirmed the IJ's judgment without opinion, "we review the IJ's opinion and scrutinize its reasoning." Dia v. Ashcroft, 353 F.3d 228, 245 (3d Cir. 2003). We will uphold factual determinations of the IJ that are supported "by reasonable, substantial and probative evidence on the record considered as a whole." Guo v. Ashcroft, 386 F.3d 556, 561 (3d Cir. 2004). The finding that an applicant for asylum is not credible will be afforded substantial deference if it is supported by specific cogent reasons. Gao v. Ashcroft, 299 F.3d 266, 276 (3d Cir. 2002). Under this standard, the IJ's adverse credibility finding will withstand review unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

The Immigration and Nationality Act, 8 U.S.C. § 1158(b)(1)(A), authorizes the Attorney General to grant asylum to an alien who demonstrates that he is a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42). Section 1101(a)(42) defines a "refugee" as an alien who is "unable or unwilling to return to . . . [his country] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." Whether an alien has established a well-founded fear of persecution turns on the "subjective mental state of the alien" and on the objective nature of his reasons for fearing persecution. INS v. Cardoza-

3

Fonseca, 480 U.S. 421, 430-431 (1987). In contrast to withholding of removal, the relief

of asylum is discretionary. Id. at 428 n.1 (stating that the Attorney General may, in his or

her discretion, grant a refugee asylum). The alien bears the burden of establishing

eligibility for asylum. 8 C.F.R. § 208.13(a).

III.

With these legal precepts in mind, we examine the decision of the IJ in the case at

bar. Although the IJ did not explicitly find the Petitioner not credible, it is apparent from

his decision that he did not credit crucial portions of Petitioner's testimony. The IJ

rejected Petitioner's account because of a wealth of inconsistencies in descriptions of

events, and because Petitioner failed to support his claims of party membership. We quote

liberally from the IJ's opinion:

> [L]et us take a look at the inconsistencies and they are legion . . . .
> [R]espondent has submitted nothing to corroborate any of the alleged acts
> of persecution against his family. There is nothing to show that his father
> was killed. There is nothing to show from any other any witnesses, the wife
> or anybody else, that there is a line of communication open with the mother
> or any documents from Ivory Coast to show that any of this persecution
> occurred. We have identity documents, so obviously he seems to be able to
> get documents. We have a vaccination certificate, a consular certificate, a
> voting card, but we have nothing to corroborate any of the acts of
> persecution. Now that does not necessarily mean that a person must be
> denied if they do not have corroboration, but when the inconsistencies are
> so insufficient and so incredible, then it is not unreasonable to look for
> corroboration.
> . . . The respondent testified that on December 29th, 2000, while at a
> protest in Abidjan in the street I was arrested. Well, that is completely
> inconsistent with his testimony, because his testimony was that he was in
> the store. Not only was he in the store, but the police came in the store and
> rousted out everybody and were seeking out Julas. That is totally

4

inconsistent. Now why in the world would the person who prepared [Diabate's asylum application] want to throw in a protest? That is not what is important. What is important is the arrest. So I believe the respondent lied because we have this glaring inconsistency and no valid reason why the preparer would want to gild the lily on that aspect. Now what else do we have? Respondent testified that he was held for one week. Clear. And yet, he was held for four hours according to Exhibit 2 . . . .

. . . The respondent testified very clearly that he was released with the understanding he was not going to be involved in politics. That is one of the reasons he believes he was released. And he did not engage in politics if you believe his testimony. He did nothing to attract the police's attention . . . . Well, if you read his asylum application, it states . . . on January 25, 2001, while I was in a big protest, the security forces came to our house and my father tried to protect my family and they killed him. Well, first of all, there is a major inconsistency because the respondent said I was not at a protest, in fact, I was obeying the police. He is lying . . . .

. . . This is a man who claims to be a political person . . . . I have nothing to show that he was ever a member of the RDR. Nothing. In fact, he submits an asylum application . . . which is very clear[:] I belong to the Jula ethnic group. I have never been involved in politics. I do not practice politics and then he has the effrontery at the hearing today to say, well, what I really meant was I joined, but I really did not join until after I was persecuted. That is a lot of nonsense. Who in the world does he think he is fooling? I have a clear statement that says I have never been involved in politics and suddenly he becomes Mr. RDR, with no back-up, no documentation.

(App. 12-15.)

In the lengthy passage quoted above, the IJ identifies a string of inconsistencies and failures by the Petitioner to corroborate his testimony. Several of the inconsistencies cited by the IJ go to the heart of the Petitioner's complaint, involving the alleged instances of persecution and his political activity. See Berishaj v. Ashcroft, 378 F.3d 314, 323 (3d Cir. 2004).

Additionally, had Petitioner been active in RDR as claimed, some corroboration

5

should have been forthcoming. Petitioner suggests that the IJ erred in demanding corroboration, and cites the Ninth Circuit decision in Abovian v. INS for the proposition that "[a] lack of corroborating evidence is certainly not substantial evidence supporting an adverse credibility finding." 219 F.3d 972, 978 (9th Cir. 2000). Subsequent to Abovian, however, this Court held in Abdulai v. Ashcroft that corroboration may sometimes be required of otherwise-credible testimony. 239 F.3d 542, 545 (3d Cir. 2001). In Abdulai, we formulated a three-part inquiry: (1) an identification of facts for which it is reasonable to expect corroboration; (2) the presence or absence of such corroboration in the record; and (3) the adequacy of applicant's explanation for its absence. Id. at 554. In the instant case, the IJ satisfied this test. He first pointed out that Petitioner had identity documents, including "a vaccination certificate, a consular certificate, [and] a voting card," showing that "obviously he seems to be able to get documents." (App. at 12.) Petitioner, however, failed to present any corroboration of his testimony that he was an RDR member. He also failed to explain the absence of the evidence. It therefore was not improper for the IJ to consider the absence of corroboration of Petitioner's testimony about his RDR membership.

We conclude that the IJ's credibility finding was supported by substantial evidence. Having refused to credit Petitioner's fluctuating summary of the facts, the IJ found that Petitioner failed to meet his burden of proof entitling him to asylum status.

IV.

6

In addition to asylum, Petitioner seeks withholding of removal and relief under CAT. A person who seeks withholding of removal must show that his "life or freedom would be threatened" on account of one of the five grounds enumerated in § 1101(a)(42)(A). To show that his life or freedom would be threatened, the alien must establish a "clear probability of persecution." INS v. Stevic, 467 U.S. 407, 430 (1984). Under the clear probability standard, an alien must prove that it is "more likely than not" that he would be subject to persecution on account of one of the five statutory grounds. Id. at 424. This clear probability standard requires a greater evidentiary showing than is needed to establish a well founded fear—the requirement for asylum. Cardoza-Fonseca, 480 U.S. at 446. "Thus, if an alien fails to establish the well-founded fear of persecution required for a grant of asylum, he or she will, by definition, have failed to establish the clear probability of persecution" needed to qualify for withholding of removal. Zubeda v. Ashcroft, 333 F.3d 463, 469-470 (3d Cir. 2003). In the case at bar, in which Petitioner has failed to make out a claim for asylum, he cannot meet the "clear probability" standard. The IJ therefore did not err in dismissing Petitioner's claim for withholding of removal.

Petitioner's CAT claim also lacks merit. To obtain relief under CAT, an applicant must establish "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." Sevoian v. Ashcroft, 290 F.3d 166, 175 (3d Cir. 2002) (quoting 8 C.F.R. § 208.16(c)(2)). Once an applicant establishes a claim for relief under CAT, he or she may not be removed to the country where the torture occurred or

7

would occur. <u>Zubeda</u>, 333 F.3d at 472. The burden of establishing eligibility for relief under CAT is on the applicant. 8 C.F.R. § 208.13(a). Apart from loosely stating that he was "tortured" by the police during his first detention, Petitioner makes little or no effort to meet his high burden. Having denied Petitioner's asylum claim, the IJ did not err when he denied the CAT claim as well.

Finally, as to the contention that the IJ failed to render a decision about the political and tribal persecution present in Ivory Coast, we observe that proof of such conditions in the abstract is insufficient to support Petitioner's claims. The Petitioner has the burden of showing how such conditions, if they in fact existed, directly affected him. This he failed to do.

V.

We have considered all contentions presented by the parties and conclude that no further discussion is necessary.

The petition for review will be denied.