**Cesar Augusto CARDONA TORO, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 08–4897.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Jan. 27, 2010.

Opinion filed: March 23, 2010.

Joyce A. Phipps, Esq., Plainfield, NJ, for Petitioner.

Michael B. Mukasey, Esq., Debevoise & Plimpton, New York, NY, Thomas W. Hussey, Esq., Samia Naseem, Esq., Ari Nazarov, Esq., Blair O'Connor, Esq., United States Department of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

Before: AMBRO, CHAGARES and ALDISERT, Circuit Judges.

OPINION

PER CURIAM.

Cesar Augusto Cardona Toro ("Cardona") petitions for review of a decision by the Board of Immigration Appeals ("BIA") rendered on December 8, 2008. For the reasons that follow, we will deny the petition for review.

I. *Background*

Cardona is a native and citizen of Colombia. He entered the United States in October 2002 and overstayed his visa. He was served with a Notice to Appear. In August 2006, he conceded removability and applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), claiming he suffered past persecution and fears future persecution and torture in Colombia on account of his political opinion.

At his hearing before the Immigration Judge ("IJ"), Cardona testified to the following: Cardona was an artist and art teacher in Colombia. In March 1999, he displayed three paintings that were critical of Colombia's revolutionary Armed Forces of Colombia ("FARC"). A group of six

men associated with the FARC entered the art school, damaged the paintings, and threatened Cardona with a gun, stating that if Cardona continued making such paintings, he "was going to die in the gutter" and they "would put a bomb in the [art] school." A.R. 135–36

The men returned several times and demanded payment of a "fine." Although he could have afforded it, Cardona refused to pay. During the last visit, one of the men hit Cardona twice on the head with a gun and threw him to the ground. Shortly thereafter, Cardona left the art school and fled to his parent's home in another city.[1] Cardona became depressed. He went into hiding for nearly three years and eventually fled to the United States in October 2002.

The IJ found that Cardona was not a credible witness because his first asylum application omitted key details of his story, see A.R. 297–98, and because a report from Cardona's psychiatrist did not mention any fear of the FARC, see A.R. 215. The IJ also concluded that even if Cardona had been credible, the events he described did not rise to the level of persecution. In addition, the IJ concluded it was unlikely that the FARC was still interested in Cardona because years had passed since the alleged acts of persecution. Accordingly, the IJ denied relief.

Cardona appealed.[2] The BIA concluded, inter alia, that the IJ's adverse credibility findings were not clearly erroneous. In addition, the BIA affirmed the conclusion that, even if he had been credible, Cardona failed to demonstrate past harm

rising to the level of persecution or a well-founded fear of future persecution. Although Cardona attempted to present new evidence of country conditions in Colombia, the BIA declined to consider the new evidence and also declined to remand the proceedings to the IJ for further consideration. The BIA dismissed the appeal.

This timely counseled petition for review followed.

## II. Analysis

■ We have jurisdiction to review final orders of removal pursuant to 8 U.S.C. § 1252(a)(1). We generally review only final orders of the BIA. See Li v. Att'y Gen., 400 F.3d 157, 162 (3d Cir.2005); Abdulai v. Ashcroft, 239 F.3d 542, 548–49 (3d Cir.2001). However, where the BIA adopts the IJ's reasoning and discusses the bases of the IJ's decision, we also review the IJ's order. Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir.2004). We review legal conclusions de novo, see Ezeagwuna v. Ashcroft, 325 F.3d 396, 405 (3d Cir.2003), and uphold factual determinations if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Guo v. Ashcroft, 386 F.3d 556, 561 (3d Cir.2004). Ultimately, for Cardona to succeed on his petition for review, this Court "must find that the evidence not only supports that conclusion [that the application should have been granted], but compels it." INS v. Elias–Zacarias, 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (emphasis in original).

Cardona has not offered anything to demonstrate that the finding is clearly erroneous.

---

1. Cardona also testified that, in November 1999, he was invited to paint a portrait for a church in another town. At the unveiling, Cardona heard shots and saw a man from the FARC. Although someone was killed in the church shooting, Cardona was unharmed. The IJ found that Cardona failed to demonstrate that this incident was directed at him.

2. Cardona did not appeal the IJ's denial of his CAT claim to the BIA and he has not raised the issue in his petition for review. Accordingly, we conclude he has abandoned it.

To qualify for asylum, Cardona was required to establish that he is "unable or unwilling to return to [Colombia] ... because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."[3] INA § 101(a)(42)(A) [8 U.S.C. § 1101(a)(42)(A)]; INA § 208 [8 U.S.C. § 1158]. Here, the IJ denied relief on two independent grounds: (1) that Cardona was not a credible witness; and (2) even if credible, Cardona did not establish past persecution or a well-founded fear of future persecution. The BIA affirmed both conclusions. Because it is dispositive of the petition for review, we will limit our primary discussion to the holding that Cardona failed to establish past persecution or a well-founded fear of future persecution.[4]

### A.

Persecution encompasses "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir.1993). The most egregious acts of alleged persecution to which Cardona testified were the FARC's death threats against him, which were made at gunpoint.

While such threats are abhorrent, they are not necessarily persecution. We have held that not all forms of unfair, unjust, or even unlawful treatment qualify as persecution. *Id.* Indeed, unfulfilled threats constitute persecution in only a very narrow set of circumstances. In order to qualify, the threats must be of a highly imminent and menacing nature. *Li v. Att'y Gen.*, 400 F.3d 157, 164 (3d Cir.2005). Even if made at gunpoint, not all death threats are sufficiently imminent and menacing. *See Gomez–Zuluaga v. Att'y Gen.*, 527 F.3d 330, 342 (3d Cir.2008) (incidents in which applicant was "rounded up ... at gunpoint," without physical injury or robbery, were oblique and not imminent and did not constitute persecution).

---

**3.** To qualify for withholding of removal, Cardona was required to establish that his "life or freedom would be threatened" on the basis of the categories listed in the asylum statute. INA § 241(b)(3)(A) [8 U.S.C. § 1231(b)(3)(A)]. "To meet this test, the alien must demonstrate that there is a greater-than-fifty-percent chance of persecution upon his or her return." *Senathirajah v. INS*, 157 F.3d 210, 215 (3d Cir.1998).

**4.** The IJ based his adverse credibility determination on certain differences between Cardona's initial asylum application and his amended application. *See* A.R. 285–98 (initial application); A.R. 264–84 (amended application). The I.J. noted that the initial application omitted significant details that appeared in the amended application. A.R. 98–99. These "inconsistencies" served as the primary basis of the I.J.'s adverse credibility determination. A.R. 99. However, the I.J.'s analysis downplayed a material difference between the two applications. Cardona is a non-English speaker. While his initial application was prepared with the help of his relatives, his amended application was prepared with the assistance of counsel. Although the I.J. recognized that "an individual can certainly do a better job with an attorney ... than without an attorney," he did not adequately address the quality of the assistance that Cardona actually received from his relatives. A.R. 98. Indeed, on its face, Cardona's initial application is riddled with grammatical errors that call into question the quality of this assistance. *See e.g.*, A.R. 291, 297–98. Given this, we conclude that the alleged "inconsistencies" in Cardona's successive applications, by themselves, do not support an adverse credibility determination. *See Cao v. Att'y Gen.*, 407 F.3d 146, 160 (3d Cir.2005) (" '[A]n applicant's testimony is not per se lacking in credibility simply because it includes details that are not set forth in the asylum application.' ") (quoting *Lopez–Reyes v. INS*, 79 F.3d 908, 911 (9th Cir.1996)). Therefore, we reverse the I.J.'s adverse credibility determination as unsupported by substantial evidence.

Here, the record reflects that Cardona did not suffer any serious physical injury and the FARC members never made any real attempt to follow through with their threats. *See* A.R. 156–57 (Hrg. Tr. at 35–36) (testifying that, although Cardona did not pay the "fine," the FARC never put a bomb in his art school as threatened). Generally, situations involving threats with little or no accompanying physical harm do not rise to the level of persecution. *See Gomez–Zuluaga,* 527 F.3d at 342; *cf. Chavarria v. Gonzalez,* 446 F.3d 508, 518–20 (3d Cir.2006) (incident in which applicant was robbed at gunpoint and threatened with death was sufficiently concrete and menacing to constitute persecution).

We are given some pause because, in addition to the death threats, Cardona testified that the FARC members hit him with a gun and demanded a "fine." These additional incidents, of themselves, are not sufficiently extreme to qualify as persecution. *See Fatin,* 12 F.3d at 1240. However, when considered together, these incidents at least arguably increase the sense of imminence of the danger that Cardona faced when the FARC members brandished guns and threatened his life.

On balance, we cannot conclude that these events *compel* the conclusion that Cardona experienced harm rising to the level of persecution. *See Elias–Zacarias,* 502 U.S. at 481 n. 1, 112 S.Ct. 812; *Gomez–Zuluaga,* 527 F.3d at 342 (threats coupled with relatively brief detentions at gunpoint are not past persecution); *Li,* 400 F.3d at 165–70 (3d Cir.2005) (threats coupled with actual economic hardship are not past persecution). While the FARC's actions are reprehensible, we cannot say that they necessarily fall within the "small category of cases" where the threats "are so menacing as to cause significant actual suffering or harm." *Id.* at 164. Accordingly, we conclude that the finding that Cardona did not experience harm rising to the level of past persecution rests upon substantial evidence.

### B.

■ Because Cardona did not establish past persecution, he was not entitled to a rebuttable presumption that his "life or freedom would be threatened in the future...." 8 C.F.R. § 1208.16(b)(1)(i). Cardona therefore was required to demonstrate that he "has a genuine fear, and that a reasonable person in [his] circumstances would fear persecution if returned to [his] native country." *Abdulrahman v. Ashcroft,* 330 F.3d 587, 592 (3d Cir.2003).

Although the FARC's threats against Cardona do not constitute past persecution, they are nevertheless relevant to whether Cardona has an objectively reasonable fear of future persecution. *Li,* 400 F.3d at 165 n. 3 (unfulfilled threats may be indicative of a danger of future persecution). Even considering the threats, however, there is substantial record evidence supporting the conclusion that a reasonable person in Cardona's circumstances would not fear future persecution in Colombia.[5]

---

5. Because we have accepted Cardona's credibility for purposes of our analysis, we also accept that he established a subjective fear of future persecution. *See Guo v. Ashcroft,* 386 F.3d 556, 565 (3d Cir.2004) ("A primary means of showing that fear is genuine is with credible testimony."). We therefore focus only on the requirement that Cardona had to establish an objectively reasonable fear of future persecution. To prevail, Cardona was required to show either that he would be individually singled out for persecution, or that "there is a pattern or practice ... of persecution of a group of persons similarly situated...." 8 C.F.R. § 208.13(b)(2)(iii)(A). Because Cardona never argued that there is a "pattern or practice" of persecution of similarly-situated individuals in Colombia, we consider only his individualized claim.

According to Cardona, the FARC will continue to pursue him based exclusively upon the events of the Spring of 1999, when he "defied them with my paintings and by not giving them the money." A.R. 144 (Hrg. Tr. at 23). The IJ doubted the reasonableness of this fear because this isolated incident took place so many years ago: "[t]he respondent has never had any political involvement that we are aware of prior to these two or three paintings that he painted, or since the two or three paintings." *See* A.R. 97 (IJ Decision at 11). We agree. The record is devoid of evidence that Cardona continues to be involved in any remotely political activity of concern to the FARC. Indeed, Cardona himself testified that "if [the FARC] did not see any more paintings like this, my life would be safe." A.R. 149 (Hrg. Tr. at 28). He then went on to concede that "I stopped making those paintings" after the 1999 incident. *See id.* Particularly in light of this testimony, we see nothing in the record to demonstrate that the FARC would have any continued interest in pursing Cardona.

In addition, the IJ found that the reasonableness of Cardona's fear was undercut by his testimony that he had not experienced any trouble with the FARC during the three years he lived in Colombia prior to departing for the United States. Although Cardona claimed to have been "hiding" during those years, he testified that he was living at his parents' home.[6] A.R. 147 (Hrg. Tr. at 26). He acknowledged that the FARC never looked for him at his parents' home and "they did not know that my family lived there." A.R. 148 (Hrg. Tr. at 27). Such testimony casts serious doubt upon Cardona's testimony that he cannot live safely anywhere in Colombia because the FARC's "computer system" will be able to track and find him no matter where he lives. *See* A.R. 162 (Hrg. Tr. at 41).

Cardona argues that the IJ and BIA erred in denying his future persecution claim because they "ignored" a 2006 State Department Report, which demonstrates that his fear of the FARC is objectively reasonable. We disagree. Even if the IJ or BIA arguably erred by failing to discuss the report in detail, the error was harmless. Reviewing the record as a whole, Cardona failed to establish the objective reasonableness of his fear that he would be *individually* singled out for future persecution by the FARC. There is nothing in the State Department Report compelling a contrary conclusion.

### C.

■ Cardona has moved to expand the record to include the 2008 State Department Report on Country Conditions and Human Rights Practices for Colombia. The BIA did not consider this report and it does not appear in the administrative record. Accordingly, we may not consider it. *See* INA § 242(b)(4)(A) [8 U.S.C. § 1252(b)(4)(A) ]; *Berishaj v. Ashcroft,* 378 F.3d 314, 328 (3d Cir.2004) ("It is a salutary principle of administrative law review that the reviewing court act upon a closed

---

6. Cardona contends that his three years "in hiding" do not undermine his claim because the law "does not demand that a person become a hermit." Cardona is correct that, under certain circumstances, a need to go into hiding may support a persecution claim. *See Toure v. Att'y Gen.,* 443 F.3d 310, 319 (3d Cir.2006). However, where going "into hiding" merely means relocation to another part of the country to avoid persecution, this may undermine the asylum claim. *Id.* at 319 n. 3. Here, Cardona testified that he relocated to his parents' home and the FARC never made any attempt to find him there. *See* A.R. 147–48 (Hrg. Tr. at 26–27). There is nothing to support his claim that he was required to become a "hermit." Based upon the record, we conclude that Cardona's move to his parents' home is appropriately viewed as a relocation.

record."). While we have specifically called upon the BIA to consider current country information where possible so that we may avoid review of administrative records "so out-of-date as to verge on meaningless," we have not adopted the approach of considering reports if they were not considered by the BIA in the first instance. *See Berishaj*, 378 F.3d at 331. Cardona's motion is therefore denied.

### III. *Conclusion*

In sum, we conclude that substantial evidence supports the denial of Cardona's asylum application. In addition, because "[t]he standard for withholding of removal is higher than, albeit similar to, the standard for asylum.... If [Cardona] is unable to satisfy the standard for asylum, he necessarily fails to meet the standard for withholding of removal...." *Lukwago v. Ashcroft*, 329 F.3d 157, 182 (3d Cir.2003).

For all of the foregoing reasons, we will deny the petition for review.