**IMG-210**                                                        **NOT PRECEDENTIAL**

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

_____

No. 09-2920

_____

ZHONG SHEN,
a/k/a Samuel Shen,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of a Decision of the
Board of Immigration Appeals
(Agency No. A088-378-202)
Immigration Judge:  Honorable Henry S. Dogin

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 19, 2010

Before:  RENDELL, FISHER AND GARTH, Circuit Judges.

(Filed: June 1, 2010)

_____

OPINION

_____

PER CURIAM

Petitioner Zhong Shen seeks review of a decision by the Board of Immigration Appeals ("BIA") rendered on June 1, 2009. For the following reasons, we will deny the petition for review.

## I. Background

Shen is a native and citizen of China. He arrived in the United States in May 2007 and overstayed his visa. In November 2007, he applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), based upon his practice of Falun Gong.

Specifically, Shen claimed that he began practicing Falun Gong in 2005, when he was living in Germany.[1] He alleged that, while in Germany, he received harassing phone calls from an exchange in China, an unknown person sent inappropriate materials to his business clients, and the Chinese Commerce Department withheld his business merchandise, which subsequently caused him to lose his business. Shen testified that, in May or June 2006, his wife, who was a government employee and lived in China, contacted him in Germany to inform him that the police had ordered her to tell Shen to stop practicing Falun Gong. She also stated that her employer threatened to terminate her if Shen did not comply. When Shen refused, his wife divorced him. Shen spent two

---

[1]Although Shen testified to additional incidents prior to 2005, including a brief arrest and detention in China in 2002, these events took place before he became a Falun Gong practitioner. Moreover, Shen concedes that the 2002 detention is not an instance of past persecution. (See Petitioner's Brief at 23, n.11.)

weeks in China in February 2007 to file the divorce papers. Shen claims that, since arriving in the United States in May 2007, he has increased his Falun Gong practice and participates in protest activities. He fears that if he returns to China, the Government will monitor him, arrest him, and kill him to harvest his organs.

On May 19, 2008, the IJ denied Shen's application, concluding that he failed to establish past persecution or a well-founded fear of future persecution. Shen appealed. The BIA affirmed the decision and dismissed the appeal.

This timely counseled petition for review followed.

## II. Analysis

We have jurisdiction to review final orders of removal pursuant to INA § 242(a)(1) [8 U.S.C. § 1252(a)(1)]. We review final orders of the BIA. See Li v. Att'y Gen., 400 F.3d 157, 162 (3d Cir. 2005); Abdulai v. Ashcroft, 239 F.3d 542, 548-49 (3d Cir. 2001). We review legal conclusions de novo, see Ezeagwuna v. Ashcroft, 325 F.3d 396, 405 (3d Cir. 2003), and uphold factual determinations supported "by reasonable, substantial, and probative evidence on the record considered as a whole." Guo v. Ashcroft, 386 F.3d 556, 561 (3d Cir. 2004). To succeed on his petition for review, we "must find that the evidence not only supports that conclusion [that Shen's application should have been granted], but compels it." INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992).

3

A.

Shen claims the BIA erred by denying him asylum and withholding of removal based upon a well-founded fear of future persecution in China.[2] For asylum purposes, a "well-founded" fear includes both a subjectively genuine fear of persecution and an objectively reasonable possibility of persecution. Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003); Abdulrahman v. Ashcroft, 330 F.3d 587, 592 (3d Cir. 2003). Substantial evidence supports the BIA's conclusion that Shen did not meet his burden of establishing the objective aspect of his asylum claim.[3] Because it is dispositive, we will limit our consideration to that issue.

Shen contends he successfully established that the Chinese Government is aware of his Falun Gong practice and "has the inclination to punish" him.[4] However, Shen cites no record evidence reflecting a reasonable possibility that Chinese officials would

_____

[2]Shen acknowledges he has waived any arguments concerning the denial of his CAT claim because he did not raise them before the BIA. Accordingly, we will not consider the denial of his CAT claim.

[3]Because he failed to meet the lower burden of proof for asylum, Shen also failed to establish eligibility for withholding of removal. Lukwago v. Ashcroft, 329 F.3d 157, 182 (3d Cir. 2003).

[4]Shen also contends he established that he is a Falun Gong practitioner and that the Chinese Government "has the capacity" to punish him. These issues are not in dispute. The BIA accepted the IJ's finding that Shen is a Falun Gong practitioner and observed that, according to a State Department Report, the Chinese Government has subjected some Falun Gong practitioners to "severe treatment." (A.R. 003-04.)

individually single him out for persecution if he were to return to China. This is a necessary component of his future persecution claim.[5]  8 C.F.R. § 1208.13(b)(2)(iii).

Shen argues that "the threats against his wife" (i.e., the threat in 2006 that his then-wife would lose her job) and "the treatment of other Falun Gong practitioners" satisfy the objective element of his claim. However, neither allegation compels the conclusion that Shen faces a reasonable possibility of being singled out for persecution in China. Moreover, the BIA affirmed the IJ's conclusion that Shen's trip to China in February 2007, which occurred long after the threat to Shen's wife and which did not raise the interest of Chinese authorities, undermined his claim. Although Shen responds that the trip required him to meet with a different Government agency from that which is in charge of suppressing Falun Gong, this contention is insufficient to undermine the substantial evidence supporting the BIA's conclusion.

B.

Next, Shen focuses on the BIA's statement that "[w]hile the State Department Country Report . . . indicates that some Falun Gong followers have been subjected to severe treatment by Chinese authorities, the respondent has not shown that every follower of Falun Gong is persecuted or that he would be targeted specifically for such treatment."

---

[5]Shen could have satisfied the objective component by establishing "a pattern or practice . . . of persecution of a group of persons similarly situated. . . ."  8 C.F.R. § 1208.13(b)(2)(iii)(A).  However, Shen did not claim a "pattern or practice" before the BIA and has not raised such a claim in his petition for review.

(A.R. 004.) He argues that the BIA applied an erroneously strict legal standard to his claim by requiring him "to demonstrate that every Falun Gong [practitioner] in China is subject to persecution."

We do not interpret the BIA's decision as requiring Shen to establish such a sweeping proposition. While perhaps not the most clearly-worded aspect of its decision, the BIA correctly considered whether Shen's proffered evidence, including the State Department Report (see A.R. 169-231), provided support for the claim that Shen would be individually singled out for persecution in China. This is the correct legal standard, and substantial evidence supports the BIA's conclusion that Shen failed to meet it.[6] Accordingly, Shen's claim lacks merit.

### C.

Finally, Shen argues that the IJ erroneously concluded that portions of his testimony lacked plausibility. However, the BIA did not rely upon the IJ's implausibility findings. Because we review the BIA's decision, we need not consider this claim.

### III. Conclusion

For the foregoing reasons, we will deny the petition for review.

---

[6]For instance, the State Department Report states that "core leaders" of the movement tend to be singled out for "particularly harsh treatment," while "[m]ost practitioners . . . were punished administratively." (A.R. 188.)