NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4642
_____

MICHELINE NOEL LOCHARD; CARL OLIVER LOCHARD;
KEVIN ALEX LOCHARD,
                                                    Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                                    Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A097 200 293; A097 200 294; A097 200 295)
Immigration Judge:  Honorable Susan G. Roy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 4, 2011
Before:  SCIRICA, FISHER and ALDISERT, Circuit Judges

(Opinion Filed February 11, 2011 )
_____

OPINION OF THE COURT
_____

PER CURIAM.

        Micheline Noel Lochard, and her minor sons Carl and Kevin, petition for

review of an order of the Board of Immigration Appeals ("BIA"), which dismissed

her appeal from an Immigration Judge's ("IJ") final removal order.  We will deny

the petition for review.

I.

Lochard and her sons are natives and citizens of Haiti. They came to the United States in April 2003, and applied for asylum and related relief.[1] Lochard testified that she had been a member of the National Development Mobilization Party, or M.D.N., since January 2000. In January 2003, she received a letter from a friend inviting her to attend a Lavalas[2] meeting. She was reluctant to attend, as the M.D.N. was an anti-Lavalas party, but her friend convinced her, saying that the issues to be discussed would be social issues, such as economic development and creation of a park, rather than political issues. She attended the meeting on January 18, 2003, and the organizers passed out a form to sign up for Lavalas membership. She declined to sign it, saying that she needed to discuss it with her husband, and also said she was a member of M.D.N. She testified that she was then shoved out of the meeting, because they thought she was a spy. Around 11 p.m. that night, two men knocked on the door of her home and then forced their way in, slapped, kicked, beat and interrogated her for 10

---

1) [1]
The applications for relief are based solely on Micheline's claim that she was and/or will be persecuted because of political opinion. Although her sons also filed applications, they claimed only that they would be persecuted because of their mother's political involvement. The remainder of this opinion will refer only to Micheline's claims.

2) [2]
Fanmi Lavalas was former president Aristide's political party. See 2004 Country Reports on Human Rights Practices, Haiti, A.R. 291.

minutes.  They said they were leaving but would come back and force her to join

Lavalas and renounce her M.D.N. membership.  She suffered a bad migraine and

a tooth was loosened (and fell out after

she came to the United States).  She did not report the incident or seek medical

treatment, but her husband did report it to the police later.

On February 22, 2003, she was not home, but her husband said two men

came looking for her and asked if she had filled out the membership form; he said

no, so they said they would return later.  Her husband advised her to hide out,

and she hid at a friend's house for about one month.  Her husband then said she

could come back because things had calmed down.  On March 25, 2003,

however, seven men came at one a.m.  She was able to hide in a pool or basin

behind the house, but the men came into the house and started breaking things

and saying they would kill her.  They pointed a gun at her husband, and beat him.

 They destroyed everything in the house and then left.  She sneaked back into

the house in about 15 minutes, found her husband lying on the ground, and had

to revive him by pouring water on him.  Her husband made arrangements for her

to leave the country, and her sons followed soon after.  She first testified that her

husband was in hiding, but then said he was just trying to lie low.  She believes

that even though Aristide is no longer in power, members of the Lavalas party are

still powerful and interested in her.

The IJ found her not to be credible, based primarily on several

3

inconsistencies between her initial asylum application and her testimony: (1) the application did not mention the January 18, 2003 incident, when she was allegedly physically harmed; (2) the application did not state that she told Lavalas members at the meeting that she was a member of M.D.N.; (3) the application stated that she attended the meeting because she wanted to hear what they had to say (rather than because she thought they would not be discussing political matters); and (4) the application did not state anything about her husband being beaten during the March 25, 2003 incident. Lochard explained these discrepancies by stating that a friend filled out the form for her and that Lochard did not speak much English when she came to the United States.

The IJ's decision also mentioned an additional statement, see A.R. 212, "which was never submitted to the Court," and which addressed some of the discrepancies. The IJ considered the statement, but found it did not cure the problems with Lochard's credibility. The statement did say that Lochard told the people at the meeting that she would have to notify her party before she signed the form. The additional statement mentioned the incident on the evening of January 18th, but stated that there were three men that came to her home, rather than two. The statement also said she was punched and slapped, but did not mention her being kicked, nor did it mention that she had a migraine headache and a loosened tooth. The statement also mentioned the March 2003 incident, but did not mention that her husband was beaten. The IJ found Lochard

4

incredible due to the inconsistencies, and also because she failed to provide corroborating evidence from her husband and friends. The IJ denied all requested relief, except for voluntary departure.

On appeal, the BIA stated that the IJ "appear[ed] to have made a legal error in relying on the lead respondent's failure to submit certain documents to support her adverse credibility ruling," but found the IJ's remaining findings regarding Lochard's omissions and discrepancies "not clearly erroneous and . . . sufficient on their own to support an adverse credibility ruling." The BIA found that the discrepancies mentioned were central to Lochard's claim. The BIA also agreed that the "supplemental statement" did not solve the credibility problems, and noted that there was no indication that Lochard had "submitted the supplemental statement or testified regarding its contents to the asylum officer." Because of the credibility problems, the BIA upheld the IJ's denial of asylum and withholding of removal. The BIA noted that "respondents have not appealed from the [IJ's] denial of their applications for withholding of removal under the Convention Against Torture [("CAT")]" and thus did not address the IJ's denial of relief under the CAT.[3]

Lochard filed a timely, counseled petition for review. She argues that the

---

[3] Lochard filed a motion to reopen "seeking administrative closure of their case in order to pursue Temporary Protected Status ("TPS")." The BIA denied the motion on April 7, 2010.

BIA "abused its discretion" in denying relief, as petitioners provided "credible, consistent and objective testimony and evidence." Petitioner's Brief at 11. She argues that the BIA erred by failing to remand the matter to the IJ because of the IJ's erroneous finding regarding credibility and the need for corroborative evidence, and that her due process rights were thereby violated. Id. She further argues that the petitioners "satisfied the statutory criteria for withholding of removal and protection" under the CAT, and that the BIA erred in denying petitioners' motion to reopen to remand to the Department of Homeland Security for final processing of their applications for TPS. Petitioner's Brief at 23, 35.

II.

We first consider the scope of our review. Because Lochard did not file a petition for review of the April 7, 2010 decision, we may review only the BIA's November 17, 2009 decision. See Nocon v. I.N.S., 789 F.2d 1028, 1032-33 (3d Cir. 1986) (final deportation orders and orders denying motions to reconsider are independently reviewable; a timely petition for review must be filed with respect to the specific order sought to be reviewed). Our scope of review is further limited by the requirement that an alien "raise and exhaust his or her remedies as to each claim or ground for relief if he or she is to preserve the right of judicial review of that claim." Abdulrahman v. Ashcroft, 330 F.3d 587, 594-95 (3d Cir. 2003); 8 U.S.C. § 1252(d)(1). As the BIA noted, Lochard did not raise any issues regarding withholding of removal under the CAT in her brief to the BIA. We thus lack jurisdiction to consider whether relief under the CAT is warranted. Because the BIA issued its own opinion, we review the decision of the BIA, not that of the IJ. Huang v. Att'y Gen., 620 F.3d 372, 379 (3d Cir. 2010).

We review legal conclusions de novo, see Ezeagwuna v. Ashcroft, 325 F.3d 396, 405 (3d Cir. 2003), and uphold factual determinations, including adverse credibility findings, if they are "supported by reasonable, substantial and probative evidence on the record considered as a whole." Guo v. Ashcroft, 386 F.3d 556, 561 (3d Cir. 2004). An adverse credibility finding is reviewed under the substantial evidence test, and must be upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary." Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002) (quoting 8 U.S.C. § 1252(b)(4)(B)). To reverse an adverse credibility finding, the evidence of credibility must be so strong "that in a civil trial [the alien] would be entitled to judgment on the credibility issue as a matter of law." Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). Under the applicable law, an adverse credibility finding cannot be supported by speculation, conjecture or minor inconsistencies, but must involve discrepancies that go to the "heart of the asylum claim." Kaita v. Att'y Gen,, 522 F.3d 288, 296 (3d Cir. 2008).[4]

---

4)  [4]
Because Lochard's petition was filed before May 11, 2005, the REAL ID Act provisions regarding credibility do not apply. Kaita, 522 F.3d at 296.

The BIA here upheld the IJ's adverse credibility finding because of "significant omissions and discrepancies between [Lochard's] testimony and [her] written statements." A.R. 4-5. The omissions cited by the IJ go to the heart of Lochard's claim. In particular, we find troubling Lochard's failure to mention her beating and her husband's beating in her initial asylum application. Lin v. Att'y Gen., 543 F.3d 114, 127 (3d Cir. 2008) (attempts by applicant to enhance claims of persecution go to heart of petitioner's claim for relief). Considering those inconsistencies and the others cited by the IJ, we find that the adverse credibility finding is supported by substantial evidence.[5] Because Lochard did not meet her burden of supporting her asylum claim through credible testimony, the BIA properly upheld the denial of her asylum claim. Abdille v. Ashcroft, 242 F.3d 477, 482 (3d Cir. 2001).[6]

For the foregoing reasons, we will deny the petition for review.

---

5) [5]
   Lochard spends much of her brief arguing that the BIA erred by failing to remand to the IJ for new credibility findings, and that this failure violated her due process rights. However, Lochard failed to ask the BIA to remand the matter, and did not claim that her due process rights had been violated by her hearing before the IJ. We thus lack jurisdiction to consider the claim. 8 U.S.C. § 1252(d)(1). Lochard also argues that she provided sufficient corroborative evidence in support of her asylum claim, but the issue regarding corroborative evidence is irrelevant because she failed to provide credible testimony in support of her claim.

6) [6]
   Lochard was unable to establish refugee status for the purpose of asylum; thus, she is necessarily unable to establish the right to withholding of removal. See Zubeda v. Ashcroft, 333 F.3d 463, 469-70 (3d Cir. 2003). As

Lochard's claims have failed, the derivative claims of her sons fail as well.