**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4586
_____

JIN YU ZHENG;
CHUN JIN LIU,
                              Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
                              Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A073-183-647 and A074-153-675)
Immigration Judge:  Honorable Rosalind K. Malloy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 5, 2013
Before:  FUENTES, HARDIMAN and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 2, 2013)
_____

OPINION
_____

PER CURIAM

        Chun Jin Liu and Jin Yu Zheng, natives and citizens of China, seek review of the

final orders of removal entered by the Board of Immigration Appeals ("BIA") on

November 27, 2012.  For the following reasons, we will deny the petition for review.

I.

This case has a long procedural history, and we set forth only the facts pertinent to this petition for review. Zheng and Liu (collectively, "Petitioners") are husband and wife. They entered the United States in 1996 without inspection and were placed in deportation proceedings. They admitted that they were deportable as charged but applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). (A.R. 776.) As grounds for relief, they argued that Liu was subjected to a forced abortion and that they feared future persecution due to China's family planning policies.[1] Petitioners submitted, among other things, an abortion certificate and a fine notice in support of their applications. In response, the Department of Homeland Security ("DHS") submitted a United States Consulate investigative report, which found that the abortion certificate was fabricated and that it could not verify the authenticity of the fine notice due to its age. The Immigration Judge ("IJ") denied their applications after making an adverse credibility determination due to Zheng's inconsistent testimony and the conclusions set forth in the consular report.[2] The BIA dismissed Petitioners' appeal and they petitioned for review. On the Government's unopposed motion, we remanded the proceedings to the BIA (A.R. 415), who remanded the case to the IJ, for the sole purpose of giving Petitioners a "reasonable opportunity to respond" to the consular

---

[1] Liu "decided to stand as a dependent" on her husband's claim. (A.R. 783-84.)

[2] Only Zheng testified, as Liu was deemed incompetent to testify due to mental disability. (A.R. 1125.)

2

report's findings (A.R. 396). The IJ again denied Petitioners' applications and granted them voluntary departure. The BIA affirmed, and they filed the instant petition for review.

II.

We have jurisdiction to review the BIA's final order of removal pursuant to 28 U.S.C. § 1252(a). Our review is for substantial evidence, that is, "[w]e will defer to and uphold the IJ's adverse credibility determinations if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole, but such findings must be based on inconsistencies and improbabilities that go to the heart of the asylum claim." Chen v. Gonzales, 434 F.3d 212, 216 (3d Cir. 2005) (internal quotation marks and citation omitted). We will affirm "unless the evidence not only supports a contrary conclusion, but compels it." Zhang v. Gonzales, 405 F.3d 150, 155 (3d Cir. 2005).[3]

Petitioners challenge the agency's adverse credibility determination primarily by challenging the consular report. We turn first to Petitioners' claim that their due process rights were violated by its admission. Aliens facing removal are entitled to due process protections, which in the evidentiary context mean that the evidence considered must be

---

[3] Under the REAL ID Act, an adverse credibility determination can be based on inconsistencies, inherent implausibilities, inaccuracies, and other factors, without regard to whether they go to the heart of an applicant's claim. 8 U.S.C. § 1158(b)(1)(B)(iii). The provisions of the REAL ID Act governing credibility determinations do not apply here, because Petitioners' asylum application was filed in 1996, long before the Real ID Act's May 11, 2005 effective date. See Chen, 434 F.3d at 216 n.2.

3

reliable and trustworthy.  See Ezeagwuna v. Ashcroft, 325 F.3d 396, 405 (3d Cir. 2003).

In Ezeagwuna, the agency denied relief, relying almost exclusively on a consular report

which (1) contained multiple levels of hearsay, in that the letter's author was at least three

people removed from the actual investigatory declarants; (2) contained no explanation of

what investigation actually took place; and (3) was issued to the alien only a few days

before the hearing.  325 F.3d at 406-08.  Relying on Ezeagwuna, Petitioners contend that

the IJ's reliance on the consular report was improper, arguing that the report was hearsay

and inherently unreliable.  (Pet'rs' Br. at 29-36.)  We disagree.  Unlike the report at issue

in Ezeagwuna, Susanna Liu, the author of the consular report, was in direct contact with

the hospital in Fuzhou City and the Birth Control Office.  The report was prepared by the

same person who conducted the investigation, set forth how the inquiries were made, and

included the substance of the replies she received.  (A.R. 1069-74.)  In short, the report in

this case does not present the same concerns we found problematic in Ezeagwuna, and

the IJ's admitting it into evidence did not violate Petitioners' due process rights.

We now consider Petitioners' argument that the IJ improperly gave substantial

weight to the consular report in reaching her adverse credibility determination.  Our

review of the record reveals that the IJ did not rely solely on the consular report.  Zheng

gave inconsistent testimony regarding Petitioners' claim, (A.R. 870-72, 877-81), and

admitted that he lied to the asylum officer, (A.R. 850-51).  Given Zheng's conflicting

testimony and Liu's inability to testify, the IJ continued their case to allow an

investigation into the documents they submitted to corroborate their claims, namely, the

abortion certificate and fine notice. After receiving the consular report stating that the abortion certificate was fabricated and that the fine notice could not be verified, the IJ denied relief. She concluded that Petitioners did not provide consistent and credible testimony, or sufficiently reliable independent corroboration of their claim, to meet their burden of proving either past persecution or a well-founded fear of future persecution. (A.R. 1126.) In other words, the IJ reasoned (and the BIA agreed) that the fraudulent abortion certificate undermined the veracity of Petitioners' claim that Liu suffered from a forced abortion in China.[4] In the face of contradictory and inconsistent testimony, and the lack of corroboration of documents that went to the heart of Petitioners' claims, we cannot say that the IJ's adverse credibility determination was unsupported by substantial evidence. We agree with the IJ's conclusion that Petitioners did not meet their burden of proof with respect to their asylum claim.

Petitioners also argue that the BIA erred in rejecting their allegations of ineffective assistance of counsel. First, they argued that an earlier attorney's ineffective assistance caused errors in their asylum applications. However, we agree with the BIA that ineffective assistance does not explain Zheng's "inconsistent and confused testimony . . . regarding events that go to the heart" of Petitioners' claim. (A.R. 5.) Second, Petitioners

---

[4] And, despite having the consular report for two and a half years, Petitioners did not "attempt to independently authenticate the abortion certificate or fine notice" or "obtain other corroborative evidence" that Liu had an abortion in China. (A.R. 84-92.)

5

argued that another previous attorney did not give the IJ medical records from Liu's pregnancies in the United States stating that she previously had an abortion in China. The BIA properly noted that it could not consider new evidence on appeal, and construed Petitioners' submission of those medical records as a request for a remand. (A.R. 6.) The BIA concluded that the evidence did not justify a remand to the IJ because it did not undermine the consular report or corroborate "a past forced abortion" such that it would "likely change the result in this case." (A.R. 6.) We find no error in the BIA's decision not to remand to the IJ.[5]

### III.

Because Petitioners were ineligible for asylum, we also agree that they were unable to meet the high standard applicable to applications for withholding of removal. See Guo v. Ashcroft, 386 F.3d 556, 561 n.4 (3d Cir. 2004). Nor did they demonstrate eligibility for CAT protection. See Kamara v. Att'y Gen., 420 F.3d 202, 212-13 (3d Cir. 2005). Accordingly, we will deny the petition for review.[6]

---

[5] We are unconvinced by Petitioners' argument that the BIA engaged in improper fact-finding. (Pet'rs' Br. at 43-47.) Petitioners were in deportation proceedings for fourteen years. The record was sufficiently developed with regard to their claims, such that a remand to the IJ would have been futile.

[6] We have considered Petitioners' remaining arguments and find them to be without merit.